(No. 19623.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE REID *et al.*—(BERNARD WARREN, Plaintiff in Error.)

*Opinion filed October 19, 1929.*

NELSON & RICKER, (JAMES M. BURKE, of counsel,) for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, and James B. Searcy, (Edward E. Wilson, and John Holman, of counsel,) for the People.

Mr. Justice Stone delivered the opinion of the court:

Plaintiff in error was indicted with George Reid and Charles Saxon for the crime of robbery while armed with a dangerous weapon. The indictment charges that the accused robbed one Albert E. Glitz, clerk of the Chelsea Hotel, in the city of Chicago, of the sum of $404, the money and property of Frederick A. Chramer, on the morning of October 8, 1928. Reid and Saxon pleaded guilty and testified on behalf of the People, implicating plaintiff in error. The jury returned a verdict of guilty against him, and he brings the cause to this court for review.

It appears from the evidence of the People that on the morning of October 8, 1928, about 5:20, two men armed with pistols entered the Chelsea Hotel, in the city of Chicago, and forced the clerk, Glitz, and Berenice Donau, switchboard operator, into a room adjoining the office and robbed the safe, which was standing open, taking therefrom the cash drawers and money amounting to $404. Reid and Saxon testified that after the robbery they proceeded to the home of plaintiff in error in his automobile, which they had borrowed for this robbery, and divided the proceeds of the robbery with him, and that they had also borrowed his revolver, a .45-calibre Colt's, for this robbery, which they returned to plaintiff in error, leaving in his possession also the cash boxes and tills and the silver money, amounting to about $55. Saxon and Reid were captured the same day and confessed. Police officers testified that about 7:30 that evening they went to the home of plaintiff in error, who lived in the rear of the first floor of an apartment house at 5801 Calumet avenue; that when they rapped

on the door plaintiff in error inquired who was there, and on being told that they were police officers he opened the door and admitted them. These officers testified that plaintiff in error, on their inquiry for Warren, stated that he was not Warren—that his name was Jones; that Warren had gone to his sister's home and that he was but a roomer in the house; that he persisted in maintaining that he was a roomer named Jones, and when asked to point out Warren's room he did so; that they asked him where the guns were that had been used in the robbery of the Chelsea Hotel, to which he replied he did not know; that after the officers told him that Reid and Saxon had confessed and said that the guns were in plaintiff in error's flat, he finally said one of them was in the drawer of the dresser, and that the witness found in the drawer a .44 or .45 Colt's pistol, fully loaded. The officers testified that they told plaintiff in error they wanted to search the house, and that he gave them permission to do so, claiming it was not his house but that he was a roomer there; that the three cash boxes and two covers therefor were found in the clothes closet in plaintiff in error's bed-room; that they found and took from the person of plaintiff in error the sum of $43 in paper money, which he claimed belonged to him, and that a small safe in plaintiff in error's room was taken to the police station, where plaintiff in error later opened it and some $34 in silver was found therein.

Plaintiff in error testified in his own behalf that on the evening the officers appeared he answered the door bell, and on being told that the police officers were there he opened the door and the officers entered. He testified that they asked him, "Who did you let have your car this morning at six o'clock?" that they told him that Reid and Saxon had committed a robbery with his car and that plaintiff in error had the money; that he told them that he had some money in the safe, which Reid and Saxon had given him that morning about 6:30 or quarter to seven and asked him

to keep for them, saying they had won it in a crap game, and that he turned the money over to the police officers. He denied having any connection with the robbery. Reid and Saxon further testified for the People that it was the arrangement of the three that Reid and Saxon were to rob the hotel and that they were to divide the money, giving plaintiff in error his share. They testified that they had been told that there would be several thousand dollars there. Plaintiff in error denied having made any arrangements with Reid and Saxon for this robbery but testified that he had allowed Reid to take his car at times to go riding with some friends, and that on the night previous to the robbery Reid had borrowed the car, saying that he and Saxon wanted to take some ladies out to dinner, but that he did not suppose the car would be kept out all night. He testified that he was a janitor in charge of the apartment building and other buildings in the neighborhood.

After the jury had been selected plaintiff in error filed a verified petition seeking the return of "three money tills, $99.25 in cash and currency and one .45 Colt revolver," which he alleged were taken from his private dwelling at the time of his arrest without a search warrant. The petition does not allege that the property sought to be returned was the property of plaintiff in error or that he had any interest in it. The petition prays that the property so seized be returned to the place from which it was unlawfully taken and be suppressed as evidence. On a hearing on this petition plaintiff in error testified that when the property was taken his revolver was hanging on the inside of a chiffarobe, where he always kept it; that he didn't know where the money trays were; that he did not know they were in the place at all and he did not know whether the officers took them out or not; that he opened the safe after they got to the station and there was $55 in silver in the safe, which was the money that Reid and Saxon had asked him to keep; that the money was not his and that he did not know any-

thing about the trays; that the money box was not his; that he saw the officers take the safe; that he did not know whether the other articles were taken from his place or not.

The court overruled the motion to suppress the evidence. It did not err in so doing. The petition was for the suppression of all of the evidence, part of which his testimony shows he did not know anything about and had no knowledge as to where it came from. There was not a sufficient showing at that time that this evidence was taken from him on search and seizure. Part of this evidence being competent, the court properly denied his motion to suppress it all. (*People* v. *Walczniak,* 273 Ill. 76; *Mash* v. *People,* 220 id. 86.) While plaintiff in error denied that he gave permission to the officers to search the place, the testimony of the officers was that he did give such permission, disclaiming at the time any interest in the premises. It was for the trial court to determine who of these witnesses was telling the truth. Plaintiff in error cannot complain of a search of his premises where such search is made with his consent or where he disclaims any interest in the premises at the time of the search. (*People* v. *Akers,* 327 Ill. 137; *Driskill* v. *United States,* 281 Fed. 193.) It further appears that on the trial no objection was offered to the introduction of the evidence of the police officers or Reid and Saxon concerning the arrest of the plaintiff in error, the search of his house, what property was found, the identification of it, and his connection with the articles identified by the State's witnesses as having been taken from the Chelsea Hotel. The only objection to any of this evidence came when the various articles were offered in evidence, when plaintiff in error's counsel offered a general objection. Such an objection went only to the materiality of the exhibit offered in evidence.

Plaintiff in error relies on *People* v. *Brocamp,* 307 Ill. 448, as supporting his contention that his constitutional rights were invaded and that it was error to deny his motion

to suppress the evidence. No error is assigned on the admission of the testimony of the witnesses, and, as we have seen, no objection was offered to such testimony. The *Brocamp case* does not support plaintiff in error's contention. In that case not only was a motion made to suppress the evidence, but when the property alleged to have been seized was offered in evidence specific objection was made to its introduction on the ground that it was Brocamp's property and that his constitutional rights were invaded by search and seizure. In this case the petition of plaintiff in error did not seek a return of the property to him but sought to have it suppressed and returned to the place from which it was taken. Not every search and seizure violates the constitutional rights of one against whom they are exercised. The constitution protects against unreasonable search and seizure, only. An officer making arrest, having reasonable grounds to believe that the accused is implicated in a robbery, has a right to arrest him without a warrant and search his person without a search warrant. (*People* v. *Hord,* 329 Ill. 117; *People* v. *Swift,* 319 id. 359.) In this case the plaintiff in error was clearly proved guilty. While the principal testimony against him was that of accomplices, it was of a satisfactory nature, and the jury were fully justified in believing it. In addition, the testimony as to plaintiff in error's evasion and falsehood concerning his identity when the officers appeared at his house, and the possession of the stolen property, all go to make a strong case against him, and even though it be conceded that the constitutional rights of plaintiff in error were violated in searching his premises without a search warrant, the only error arising therefrom lies in admission of the articles themselves in evidence. As no objection was raised to the testimony of the witnesses concerning such search and seizure no question of error arises on their testimony, and it cannot be said that the mere introduction of these articles in evidence was an error which could have in any way affected the verdict.

Some complaint is made of cross-examination of the witnesses Reid and Saxon by the court. The record shows no objection to that examination and that contention will not be considered here.

There is no reversible error in the record, and the judgment will be affirmed.                    *Judgment affirmed.*