(No. 21226.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THOMAS J. REYNOLDS, Plaintiff in Error.

*Opinion filed October 22, 1932.*

THOMAS D. NASH, and MICHAEL J. AHERN, for plain-
tiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A.
SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD
E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for
the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the
court:

A *subpœna duces tecum* to produce the books, records
and correspondence of the Motion Picture Operators'
Union, Local No. 110, before the grand jury of the crimi-
nal court of Cook county was served upon Thomas J. Rey-
nolds, the president of the union. Reynolds refused to
obey the subpœna, was adjudged in contempt of court and
fined $100. Assigning the invasion of certain constitu-
tional rights, he prosecutes this writ of error for a review
of the record.

On June 1, 1931, the State's attorney of Cook county
filed in the criminal court of that county a petition in which
he alleged that the grand jury was investigating the activi-
ties of the Moving Picture Operators' Union Local No. 110;
that members of the union informed him that its officers
had issued many permits to non-members authorizing them
to operate moving picture machines upon their promises
to pay the union ten per cent of their weekly wages; that

the money collected from the holders of such permits had not been paid to the union but had been used by the officers for their personal benefit, and that, for a number of years, no cards of the union had been issued to new members, but that contrary to the by-laws, rules and regulations, cards in the names of deceased and disabled members had been issued to men who were not eligible and had not been elected to membership. The State's attorney further alleged in his petition that, in order fully to investigate the charges made by members of the union, it was necessary to examine the books and records of the organization, and that if the facts charged were true they showed an embezzlement of the union's funds. The prayer of the petition was for a *subpœna duces tecum* requiring the union to produce before the grand jury on June 2, 1931, all the books, records and correspondence showing the union's activities. The petition was signed in the name of the State's attorney by an assistant, and was verified by the latter.

Pursuant to an order entered upon the petition by one of the judges of the criminal court, the clerk issued a subpœna directed to the officers and agents of the union, and to all other persons who might have custody, control or possession of any books, records and correspondence concerning the union's activities, commanding them to attend before the grand jury on June 2, 1931, to testify concerning "a certain complaint" against the officers of the union, and to produce "at the time and place aforesaid, all day books, cash books, ledgers, bank books, check books and any and all other books of account showing the payment of money" to the union, its officers or agents by members, holders of permits or other persons whomsoever, during the period from June 1, 1929, to June 1, 1931; also a complete record of all payments and disbursements of every kind and character by the union or its agents during the same period, and all books and records containing true and complete lists of the members of the union with

the dates of their initiation, and of all persons holding permits showing the dates of the issuance and cancellation of such permits, and the consideration paid therefor, together with all copies, drafts and vouchers relating thereto, and all other documents, letters and paper writings that may afford any information respecting the subject matter of the investigation.

On June 3, 1931, the State's attorney filed an information in which he set forth that the subpœna had been served upon the plaintiff in error, who was the president of the union and the custodian of its books and records; that on the return day of the subpœna the plaintiff in error willfully and unlawfully refused to produce the union's books and records before the grand jury, but instead appeared before the chief justice of the criminal court and orally moved to quash the subpœna; that his motion was overruled, and that his refusal to appear and to produce the books and records impeded the administration of justice and was calculated and intended to bring it into disrepute and contempt. The court, in accordance with the prayer of the information, entered a rule on the plaintiff in error to show cause why he should not be punished for contempt.

The plaintiff in error filed an answer to the rule to show cause. The union, he averred, had a constitution and by-laws, as well as officers, and reference was made to certain corporate functions which it exercised. He admitted that he was the president of the union and in possession of the records described in the subpœna, but he denied that these records were material or relevant to the pending investigation. He further denied the charges of illegal operations and of the misappropriation of funds. Admitting that he knowingly and willfully refused to produce the union's records as commanded, he averred that he had not intended by his conduct to be disrespectful or contumacious or to obstruct the administration of justice; that he refused to

produce the records because he had been advised by the attorney for the union that the petition for the subpœna was insufficient to give the court jurisdiction to enter the order; that the order directing the subpœna to issue was illegal and void, and that all the proceedings upon which the subpœna was predicated, and the subpœna itself, were in violation of the constitutional rights of the union. The cause was submitted to the court upon the pleadings without the introduction of evidence.

The contentions of the plaintiff in error, apart from those challenging the sufficiency of the petition, which need not be considered, are, first, that the petition and the order for the *subpœna duces tecum* and the subpœna itself invaded the union's right, under section 6 of article 2 of the constitution, to be secure against unreasonable searches and seizures of its private books and papers; and second, that the *subpœna duces tecum* was so sweeping in its terms as to be the equivalent of a general warrant and was therefore illegal and void.

Section 6 of article 2 of the constitution provides that "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched, and the persons or things to be seized." The protection guaranteed by this section is not against searches and seizures but against unreasonable searches and seizures (*People* v. *Reid,* 336 Ill. 421). The plaintiff in error invokes this provision not for himself but in behalf of the Moving Picture Operators' Union of which he is the president. The union, it appears from the answer of the plaintiff in error, has a constitution, by-laws and officers and has exercised corporate powers. These facts show *prima facie* that the union is a corporation and therefore a creature of the State. A corporation, the Supreme Court of the United States said in *Hale* v.

*Henkel,* 201 U. S. 43, at pages 74 and 75, "receives certain special privileges and franchises, and holds them subject to the laws of the State and the limitations of its charter. Its powers are limited by law. It can make no contract not authorized by its charter. Its rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation. There is a reserved right in the legislature to investigate its contracts and find out whether it has exceeded its powers. It would be a strange anomaly to hold that a State, having chartered a corporation to make use of certain franchises, could not in the exercise of its sovereignty inquire how these franchises had been employed, and whether they had been abused, and demand the production of the corporate books and papers for that purpose."

A command to a corporation is in effect a command to those who are officially responsible for the conduct of its affairs. A *subpœna duces tecum,* issued at the instance of a party or authority entitled to it, directed to a corporation or its officers, and requiring the production of books, records or papers of the corporation, does not, when the subpœna is suitably specific and properly limited in its scope, violate the unreasonable search and seizure provision of the fourth amendment to the Federal constitution (*Wilson* v. *United States,* 221 U. S. 361). This amendment was the prototype for section 6 of article 2 of our State constitution and no reason is perceived why the latter should not receive the same interpretation as the former. The plaintiff in error was in possession and control of the books, records and papers of the union, and the *subpœna duces tecum* was served upon him. If that subpœna was sufficiently specific in its description of the records and papers demanded and its scope did not transcend a legitimate purpose, it imposed upon the plaintiff in error the duty of obedience to its command, and for his failure or refusal to perform that duty, he was amenable to the criminal court. The question therefore remains whether

the records and documents, the production of which was commanded, were rightfully demanded by, and described with sufficient particularity in, the subpœna, to justify the court's adjudication against the plaintiff in error.

The particular books, records or papers to be produced should be specified in a *subpœna duces tecum* and a demand in general terms for all, or even a substantial part, of the records or documents of a person or corporation is not sufficient. The case of *Ex parte Brown,* 72 Mo. 83, affords an illustration of the rule. The petitioner was the manager of an office of the Western Union Telegraph Company at St. Louis, Missouri. By a *subpœna duces tecum* he was commanded to produce before a grand jury the originals or copies of all the telegraphic messages "between Dr. J. C. Nidelet and A. B. Wakefield, and William Ladd and J. C. Nidelet, and William Ladd and Dr. Nidelet, between Warren McChesney and A. B. Wakefield, between Warren McChesney and J. C. Nidelet, between the latter and John S. Phelps, between A. B. Wakefield and John S. Phelps, between the latter and William Ladd, and between Geo. W. Anderson and A. B. Wakefield, sent or received" within the preceding fifteen months. The petitioner refused to obey the subpœna and persisting in his refusal, he was committed for contempt and taken into custody by the sheriff. Upon an application for a writ of *habeas corpus* the Supreme Court of Missouri declared the commitment of the petitioner illegal and ordered his discharge from custody. The court said: "Here, communications, at different times within a period of fifteen months, sent or received by the parties named, are called for. The date, title, substance, or subject matter of none of them is given, and it is utterly impossible that it could have been made to appear, without more, that any of the messages were material as evidence before the grand jury. * * * The abuse of the power to compel a discovery is sedulously guarded against in equity jurisprudence, and yet ten-fold

greater injury could be inflicted by means of a *subpœna duces tecum,* if it can compel a sweeping, indiscriminate production and inspection of the papers of any party to the suit, or witness in the trial. If our bill of rights had not guarded the citizen against such an abuse of a judicial process, we would be inclined to apply to this process the wholesome restrictions which equity jurisprudence has placed upon the power of a court of equity to compel a discovery."

The rule was also asserted in *Hale* v. *Henkel,* 201 U. S. 43. The case originated in a *subpœna duces tecum* commanding Hale to produce before a grand jury all understandings or contracts, whether evidenced by memoranda or other writings, and all correspondence between the Mac-Andrews & Forbes Company and six other firms and corporations named; all reports made or accounts rendered by the latter companies and corporations to the principal company; all contracts or arrangements, however evidenced, between the latter company and four companies designated, and all letters received by the principal company from thirteen companies located in different parts of the United States. The Supreme Court found the *subpœna duces tecum* too broad in its requisition and said at pages 76 and 77: "We are also of opinion that an order for the production of books and papers may constitute an unreasonable search and seizure within the fourth amendment. While a search ordinarily implies a quest by an officer of the law, and a seizure contemplates a forcible dispossession of the owner, still, * * * the substance of the offense is the compulsory production of private papers, whether under a search warrant or a *subpœna duces tecum,* against which the person, be he individual or corporation, is entitled to protection. Applying the test of reasonableness to the present case, we think the *subpœna duces tecum* is far too sweeping in its terms to be regarded as reasonable. * * *.

If the writ had required the production of all the books, papers and documents found in the office of the MacAndrews & Forbes Company, it would scarcely be more universal in its operation, or more completely put a stop to the business of that company. Indeed, it is difficult to say how its business could be carried on after it had been denuded of this mass of material, which is not shown to be necessary in the prosecution of this case, and is clearly in violation of the general principle of law with regard to the particularity required in the description of documents necessary to a search warrant or subpœna. * * * A general subpœna of this description is equally indefensible as a search warrant would be if couched in similar terms. *Ex parte Brown,* 72 Mo. 83; *Shaftsbury* v. *Arrowsmith,* 4 Ves. 66; *Lee* v. *Angas,* L. R. 2 Eq. 59."

The *subpœna duces tecum* in the present case requires the production of complete and correct lists of the members of the union and of all persons holding permits from it; also all books showing the payment of money to the union, its officers or agents, during a specified period of two years, and a complete record of all disbursements made by the union, or its agents, during the same period, together with all copies, drafts and vouchers and all other documents, letters and writings that may afford any information concerning "a certain complaint" against the officers of the union pending before the grand jury. There is no suggestion respecting the contents of the complaint nor is the nature of the charge indicated. The books, records, documents and correspondence sought are not specified and their relevancy to the charge under investigation is not disclosed. To obey the command of the subpœna would require the production of all the books, records and papers of the union covering a period of two years as well as complete lists of members and permit holders irrespective of any time limitation. All the transactions of the union including those wholly unrelated to the subject of the un-

disclosed inquiry and however innocent, are, by the terms of the subpœna to be subjected to the grand jury's inspection. The subpœna is neither suitably specific nor properly limited in its scope. It lacks that particularity in description of the books, records or writings demanded which the law requires.

The defendant in error argues, however, that even if the plaintiff in error was not required to produce the records and papers demanded, yet he was also commanded to appear before the grand jury to testify, and that a fine of one hundred dollars was a slight penalty for his disobedience in that respect. The prayer of the State's attorney's petition was not for a *subpœna ad testificandum,* but for a *subpœna duces tecum* requiring the production of the union's books, records and correspondence before the grand jury. The primary if not the sole purpose of the proceeding was to obtain those books, records and papers. Because the *subpœna duces tecum* was too broad and sweeping in its terms respecting the union's books and records, the plaintiff in error was justified in disregarding the controlling demand made upon him. The fine certainly was not excessive but it was imposed largely, if not altogether, because the plaintiff in error refused to produce the books and records demanded. Even if the court, in imposing the fine took into consideration the refusal of the plaintiff in error to testify, the fine must fail when its major support is removed. This result does not preclude the initiation of a new inquiry by a subsequent grand jury, in which inquiry, if necessary, a sustainable *subpœna duces tecum* may be issued.

The judgment of the criminal court of Cook county is reversed.

*Judgment reversed.*