(No. 31947.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE ALLEN, Plaintiff in Error.

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

CRAWFORD & HEALEY, of Chicago, (JOSEPH E. GREEN, of counsel,) for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, WILLIAM J. McGAH, JR., PETER G. KUH, JOSEPH J. ATT-WELL, JR., and ROBERT J. COONEY, all of Chicago, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, George Allen, prosecutes this writ of error to review a judgment order of the criminal court of Cook County adjudging him in contempt of court for his refusal to obey two *subpoenas duces tecum* commanding the production of certain described books and records of Tremont Auto Sales Corporation before the grand jury.

In February, 1951, orders directing the issuance of *subpoenas duces tecum* were entered in the criminal court

of Cook County upon verified petitions of the State's Attorney, alleging that the grand jury was investigating a conspiracy to do unlawful acts by a combination of persons known and unknown to the grand jury and that production of certain described books and records before the grand jury was necessary in the course of that investigation. In accordance with the orders of the court the two *subpoenas duces tecum* here involved were issued. One was directed to Tremont Auto Sales Corporation and the other was directed to that corporation and to the defendant, George Allen, its general manager. The defendant filed a motion to quash the *subpoenas,* alleging that he was sales manager of Tremont Auto Sales Corporation and its attorney in fact to execute all documents desirable and necessary to preserve the rights of the corporation guaranteed by the Federal and State constitutions in connection with any proceeding, investigation or inquiry pending before the grand jury of Cook County. The motion to quash charged that the *subpoenas* were so sweeping in their terms as to be the equivalent of a general warrant and, hence, in violation of section 6 of article II of our constitution and the fourth amendment to the Federal constitution; that they were neither suitably specific nor properly limited in their scope and lacked the requisite particularity in their description of the books, records and writings demanded; that the production of all the records called for would unreasonably harass and interfere with the conduct of the corporation's business and affairs, and that they constituted a mere "fishing expedition," the relevance, competence and materiality of the records sought not appearing from the petitions nor having otherwise been demonstrated to the court. A hearing was had upon the motion to quash and an order was entered quashing certain portions of the *subpoenas* which are not material here.

As modified by the court's order, the first *subpoena* called for production of the following:

(1) All records showing the list of officers, stockholders, directors, and other persons having interests in the Tremont Auto Sales Corporation.

(2) The general ledger of Tremont Auto Sales Corporation.

(3) All withholding tax exemption slips of officers and employees of the Tremont Auto Sales Corporation.

The second *subpoena,* as modified, called for the following:

(1) General ledger of Tremont Auto Sales Corporation.

(2) List of officers, directors and shareholders of Tremont Auto Sales Corporation.

(3) All sales invoices of new cars for period from January 1, 1949, to the present date.

(4) Any and all records of sales to or transactions with Erie Buffalo Company, Golden Gate Company, or Rome and Silver.

(5) Check register and journal.

(6) All cancelled checks for period from January 1, 1949, to the present date.

A hearing was had at which the defendant was interrogated by the chief justice of the criminal court in the presence of the grand jurors. He testified that he was sales manager of Tremont Auto Sales Corporation and that he had received a *subpoena duces tecum* to produce records. The foreman of the grand jury stated that defendant had been under examination on two occasions, and had, upon advice of counsel, refused to bring in the books; that the grand jury was investigating a gambling game known as "policy;" that they were seeking to connect Tremont Auto Sales Corporation with some of the policy establishments on the south side, and believed that, by investigating these books, they could connect the various policy operators. The court orally ordered defendant to produce the records of Tremont Auto Sales Corporation. Defendant refused.

The next day, February 20, the challenged judgment order was entered. It found that defendant was the general sales manager of Tremont Auto Sales Corporation; that he testified that he had charge of the books and records in question and had been advised by counsel to not produce them; that defendant had reasonable opportunity to comply with the *subpoenas duces tecum;* that the documents called for were material, relevant and pertinent to the grand jury's investigation into the operation of so-called policy wheels known as Rome and Silver, Erie Buffalo and Golden Gate companies, and the criminal combination through which they operated; that defendant willfully, deliberately and knowingly refused to produce these documents, and told the court he did so upon advice of his counsel for the reasons set forth in his motion to quash the *subpoenas;* that defendant's refusal to comply with the orders of the court was deliberate, willful, contemptuous and tended to lessen the dignity of the court and to impede the due administration of justice, and that the contempt was committed before the grand jury, a constituent part of the criminal court of Cook County and also before the court itself. Defendant was adjudged in direct contempt of court and sentenced to imprisonment in the county jail "until such time as he shall produce the books and records required by said *subpoenas duces tecum* into this court or until released by due process of law." Defendant's motion in arrest of judgment was overruled.

To reverse the judgment, defendant advances three contentions. The first is that the *subpoenas* were so broad and sweeping in their terms as to violate defendant's rights under the Federal and State constitutions. The constitutional right relied upon is the guaranty against unreasonable search and seizure afforded by the fourth amendment to the Federal constitution and by section 6 of article II of our constitution. Of course, there was here no actual search and no actual seizure. But under both constitutions

a doctrine of "constructive" search has been evolved and applied to the enforced production of books and records. By analogy to the "general warrant" or "writ of assistance" of the common law and of colonial days, a *subpoena duces tecum* which is unreasonably broad in its demands and general in its terms is said to constitute an unreasonable search and seizure. *Hale* v. *Henkel,* 201 U.S. 43; *People* v. *Reynolds,* 350 Ill. 11; see *Oklahoma Press Publishing Co.* v. *Walling,* 327 U.S. 186.

We shall consider first defendant's objection based upon the alleged lack of definiteness of the *subpoena.* Among the books and records commanded to be produced were a list of officers, directors and shareholders of the corporation, its general ledger, its check register and journal, withholding tax exemption slips of officers and employees of the corporation, sales invoices of new cars for a specified period and cancelled checks for the same period. There can be no objection to the particularity with which these documents are described. The only items concerning which doubt might conceivably exist are "All records showing the list of officers, stockholders, directors, and other persons having interests in the Tremont Auto Sales Corporation" and "Any and all records of sales to or transactions with Erie Buffalo, Golden Gate Company, or Rome and Silver." As to the first of these items, but little more is required than the production of a list of officers, directors and shareholders. Compliance would not, in our opinion, be unduly difficult. As to the second item, the trial judge found that the grand jury was investigating "into the operation of so-called policy wheels known as Rome and Silver, Erie Buffalo, and Golden Gate companies, and the criminal combination through which they are operated." By his own testimony, defendant had in his possession the books and records of the corporation. If he had in his possession any records of the corporation concerning sales to or transactions with the companies named, he could

readily have produced them. If there were no records of sales to or transactions with the companies named, he could have so stated and he would have been absolved of any further duty in this respect. Defendant's objection that the documents sought were not described with sufficient particularity is unsound.

In support of his objection to the breadth of the *subpoenas*, defendant relies on two cases, *Hale* v. *Henkel*, 201 U.S. 43, and the Illinois case which follows it, *People* v. *Reynolds*, 350 Ill. 11. He argues that because the *subpoenas* here involved call for numerous books and documents covering a considerable span of time, as did the *subpoenas* held invalid in those cases, these *subpoenas* must likewise be invalidated. But it is obvious that no absolute rule can be laid down either as to the number of books and records which can be compelled to be produced or as to the time interval which they cover. For what the constitutions prohibit is not all searches and seizures, but only those which are unreasonable. (*People* v. *Reid*, 336 Ill. 421; *Wilson* v. *United States*, 221 U.S. 361.) The reasonable scope of an investigation depends upon what is being investigated. Here, the subject of investigation was the existence of a connection between Tremont Auto Sales Corporation and the operators of various "policy" establishments. Precisely where, among the records of the corporation, evidence of such a connection might appear was, of course, unknown to the grand jury. The constitutional provisions were not intended to paralyze the power of the government to ferret out crime. The observation in *Consolidated Rendering Co.* v. *Vermont*, 207 U.S. 541, 554, is pertinent: "But unless it can be said that the court or grand jury never has any right to call for all the books and papers, or correspondence, between certain dates and certain persons named, in regard to a complaint which is pending before such court or grand jury, we think the objection here made is not well founded. We see no reason

why all such books, papers and correspondence which related to the subject of inquiry, and were described with reasonable detail, should not be called for and the company directed to produce them. Otherwise, the State would be compelled to designate each particular paper which it desired, which presupposes an accurate knowledge of such papers, which the tribunal desiring the papers would probably rarely, if ever, have."

That *Hale* v. *Henkel* was not intended to fix immutably the permissible limits of a *subpoena duces tecum* is demonstrated by the course of subsequent decisions. In *Wilson* v. *United States,* 221 U.S. 361, a *subpoena* was held valid which required the production of copies of all letters and telegrams signed, or purporting to be signed, by the president of a corporation during a two-month period. The grand jury *subpoena* challenged and sustained in *Wheeler* v. *United States,* 226 U.S. 478, called for production of "all cash books, ledgers, journals, and other books of account of said Wheeler & Shaw, Inc., for and covering the period between October 1, 1909, and January 1, 1911, all copies of letters and telegrams signed or purported to be signed by said Wheeler & Shaw, Inc., or by its president or its treasurer in behalf of said Wheeler & Shaw, Inc., during the months of October, November and December, 1909, and the entire year of 1910." In *Brown* v. *United States,* 276 U.S. 134, the *subpoena* called for all letters, telegrams or copies thereof passing between a national trade association and its members, including their officers and agents, over a period of two and one-half years, with reference to eighteen different items. The court, by Mr. Justice Sutherland, said: "The subpoena * * * specifies a reasonable period of time and, with reasonable particularity, the subjects to which the documents called for relate. The question is ruled, not by *Hale* v. *Henkel,* but by *Consolidated Rendering Co.* v. *Vermont,* 207 U.S. 541, 553-554, and *Wheeler* v. *United States,* 226 U.S. 478,

482-3, 489." The administrative *subpoena* sustained in *Oklahoma Press Publishing Co.* v. *Walling,* 327 U.S. 186, called for: "All of your books, papers and documents showing the hours worked by and wages paid to each of your employees between October 28, 1938, and the date hereof, [October 14, 1943,] including all payroll ledgers, time sheets, time cards and time clock records, and all your books, papers and documents showing the distribution of papers outside the State of Oklahoma, the dissemination of news outside the State of Oklahoma, and the source and receipt of advertisements of nationally advertised goods." The legislative *subpoena* upheld in *United States* v. *Bryan,* 339 U.S. 323, required production of "all books, ledgers, records and papers relating to the receipt and disbursement of money by or on account of the Joint Anti-Fascist Refugee Committee or any subsidiary or sub-committee thereof, together with all correspondence and memoranda of communications by any means whatsoever with persons in foreign countries. The said books, papers and records demanded herein are for the period from January 1, 1945 up to and including the date of this *subpoena,* March 29, 1946."

These decisions indicate unmistakably that the permissible breadth of a *subpoena duces tecum* is to be measured by the scope of the problem under investigation and that a *subpoena* which is not unwarrantably broad when measured by that standard will be sustained. A similar approach was taken in *United States* v. *Bausch & Lomb Optical Co.* 321 U.S. 707, where the visitorial powers of the Federal government under an antitrust decree were challenged by a claim of unreasonable search and seizure. As pointed out in *People* v. *Reynolds,* 350 Ill. 11, the provision of the Federal constitution concerning search and seizure is the prototype of our Illinois constitutional provision, "and no reason is perceived why the latter should not receive the same interpretation as the former." The

*subpoenas* here involved are reasonably restricted in scope and in time span, in view of the subject matter under investigation.

Defendant's second contention is that there was no adequate showing that any or all of the items required to be produced were material to any subject of inquiry by the grand jury. In support of this contention, defendant relies upon *Firebaugh* v. *Traff*, 353 Ill. 82, and *Lester* v. *People*, 150 Ill. 408. Both are civil cases. In each case, a showing of materiality to the issues as they had been framed by the pleadings was required as a condition to the validity of an order requiring the production of documents. The "materiality" of evidence presupposes the existence of a standard by which materiality may be determined. It is a relative term. In litigated cases, materiality can be fixed with a relatively high degree of precision by reference to the issues formulated in the pleadings. No standard of comparable certainty exists with respect to an inquiry by a grand jury. The very purpose of such an inquiry is to uncover matters previously unknown to the investigating agency. It is not necessary that a "cause" or "specific charge" be pending before the grand jury as a condition to its right to command the production of documents. (*Hale* v. *Henkel*, 201 U.S. 43; *Wilson* v. *United States*, 221 U.S. 361.) Such a requirement, as pointed out in *Hale* v. *Henkel*, would sharply curtail the historic function of the grand jury. "[R]elevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." *Oklahoma Press Publishing Co.* v. *Walling*, 327 U.S. 186.

Unless the effectiveness of the grand jury in the administration of criminal law is to be drastically impaired, the most that can be required as a standard of materiality is as precise a statement of the subject under investigation as the circumstances permit. In this case the subject under

investigation, which was disclosed to the defendant, was the existence of a conspiracy involving persons known and unknown to the grand jury to violate the gambling laws of the State. What was sought was the examination of records believed to contain information showing a connection between the persons engaged in the conspiracy. The chief law enforcement officer of the county and the foreman of the grand jury asserted their belief that the documents in question were material to that inquiry, and, after a careful hearing, the chief justice of the criminal court so found. Defendant's contention that there was an insufficient showing of materiality cannot be sustained.

Defendant's last contention is that the order of commitment must be reversed because it is now impossible for him to comply with it, since the February, 1951, grand jury is no longer in existence. To support this contention, defendant argues that the contempt order was not punitive in nature, and that it was not intended to punish him for a past contempt. He asserts that the order was intended to coerce the future production of books and documents but that since there is not presently pending any cause in the criminal court to which the documents would be relevant, compliance with the order is impossible now and in the foreseeable future. It is a sufficient answer that the books and records were not ordered to be produced before the February, 1951, grand jury but, on the contrary, as the order specifically recites, "into this court,"—the criminal court of Cook County. It is immaterial, so far as defendant is concerned, whether there is presently pending any cause in which these books and documents would be relevant. The only duty resting upon him is to comply with the order of the court and this can be done when, as and if he desires.

*People ex rel. Meier v. Lewe,* 380 Ill. 531, relied upon by defendant, is not in point. The issue in that case was whether a trial judge had jurisdiction to release from im-

prisonment a contemner adjudged guilty of civil contempt, upon a showing of inability to comply with an order to pay money. Nor does *Washington ex rel. O'Neil* v. *Wallace,* 96 Wash. 107, aid defendant. There, a county auditor was sentenced for contempt for failing to comply with a mandate ordering him, in his official capacity, to authenticate certain public warrants. While his appeal was pending, his term of office expired. It was therefore held to be beyond his power to comply with the order, and he was discharged from incarceration.

Here, defendant, according to his own testimony, has custody and control of all the documents described in the two *subpoenas.* He has been ordered by the criminal court of Cook County to produce them into that court; the criminal court of Cook County is sitting and can, of course, receive and accept the documents when produced in obedience to its lawful command.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*