(No. 40049.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* HAROLD LURIE, Appellant.

*Opinion filed March 28, 1968.*

WARD, J., took no part.
SCHAEFER and UNDERWOOD, JJ., dissenting.

BELLOWS, BELLOWS & MAGIDSON, of Chicago, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and GEORGE P. LYNCH, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Respondent, Harold Lurie, appeals directly from a circuit court of Cook County order holding him in contempt of court for his refusal to obey a subpoena *duces tecum,* commanding the production of certain books and records of Gaylur Mercantile Corporation before the April 1966 grand jury.

The subpoena directed to respondent, the president of Gaylur, recited that the grand jury was conducting an investigation against "John Doe, *et al,* pertaining to frauds perpetrated against the Insurance Company of North America" and commanded him to produce, on a day certain, the following: "Your books and records pertaining to merchandise or materials taken from premises of the following companies insured by the Insurance Company of North America, including the inventory of merchandise or materials taken from the premises of the following listed insured; invoices pertaining to merchandise or materials taken from the premises of the following listed insured and thereafter sold; inventory of merchandise or materials taken from the premises of the following listed insured and on hand in any warehouse at the present time  *  *  * ." The subpoena thereafter listed the seven companies and their locations. It concluded with the command to produce "The following books and records of Gaylur Mercantile Corporation for the period from January 1, 1964 to March 31, 1966. General ledger, accounts receivable and accounts payable records, cash receipts and cash disbursements journals, payroll ledger, bank statements and cancelled checks."

Respondent filed a motion and an amended motion to quash the subpoena *duces tecum,* alleging *inter alia,* that it was not based upon probable cause and hence was an unreasonable search and seizure in violation of the fourth amendment of the Federal constitution and section 6 of article 11 of the Illinois constitution, that it was vague and indefinite and that it was equivalent to a "general warrant" proscribed by the said constitutional provisions. The trial court denied both these motions and the further motion of the respondent to set a bond staying enforcement of the subpoena pending appeal of the court's ruling. The court then directed the respondent to appear before the April grand jury and "be at their pleasure from herein." Respondent appeared before the grand jury but refused to produce

the books and records. On the same day, the State's Attorney filed a petition before the presiding judge of the criminal division for a rule to show cause why respondent should not be held in contempt of court. The rule was entered and respondent was given leave to file a written answer thereto. In his answer, respondent raised constitutional objections similar to those he raised in his motions to quash the subpoena. On motion of the State, portions of the answer challenging the authority of the grand jury to require production of the books and records absent a sufficient showing of probable cause were stricken.

In the hearing that followed, transcripts of the prior proceedings on the motions to quash the subpoena were admitted into evidence. The foreman of the grand jury testified that the investigation recited on the face of the subpoena had been docketed on April 12, 1966. The court sustained objections to respondent's cross-examination of the foreman concerning the appearance of other witnesses before the grand jury and the nature of their testimony. Respondent offered to show that these witnesses had exonerated him of commission of any frauds against the Insurance Company of North America. The chief auditor for the State's Attorney of Cook County testified that the two sets of inventories and the one set of invoices relating to each of the seven insured companies named in the subpoena were material and pertinent to the investigation being conducted by the grand jury. He stated that the other books and records named in the subpoena, the general ledger, accounts receivable and payable records, the cash receipts journal, bank statements and cancelled checks, were relevant because inspection of these items was necessary "to balance the total picture of the Company." He admitted, however, that these books and records were essential to the day-to-day operation of the business and that he was not aware of any reason why the Insurance Company of North America

would have any interest in these items since they would chiefly reflect Gaylur's expenses and transactions with individuals and corporations other than North America.

The challenged judgment order entered April 29, 1966, recited that respondent was the president of the Gaylur Mercantile Corporation, that the books and records of the corporation were kept under his care and custody in April 1966, that he appeared before the grand jury on April 25, 1966, pursuant to the subpoena *duces tecum* but refused at that time to produce the books and records as ordered; that the books and records called for were material, relevant and pertinent to the grand jury's investigation pertaining to frauds perpetrated against the Insurance Company of North America, that the refusal of respondent to produce the books and records was in direct disobedience of the court's lawful order and that the direct disobedience was obstructing, impeding and frustrating the legitimate investigation by the grand jury of said frauds and tended to lessen the dignity and authority of the court. Respondent was adjudged guilty of contempt of court and sentenced to the county jail for a period of six months "or until otherwise discharged by due process of law." It is from that order that this appeal is taken.

Although respondent advances several contentions, we find it necessary to consider only that relating to the reasonableness of the demand and challenging the sweeping and unreasonable breadth of the list of documents, production of which is demanded. It is established law that a subpoena *duces tecum* which is unreasonably broad in its demand and general in its terms constitutes an unreasonable search and seizure in violation of the Federal and State constitutions. (*People ex rel. Legislative Commission* v. *Keefe*, 36 Ill.2d 460, 465; *People* v. *Allen*, 410 Ill. 508, 513; *cert.* den. 344 U.S. 815, 97 L. Ed. 635, 73 S. Ct. 9; *People* v. *Reynolds*, 350 Ill. 11, 19-20.) It is also established that the permis-

sible breadth of such a subpoena depends upon and is measured by the subject matter and the scope of the problem under investigation. *People* v. *Allen,* at 514-516.

The subpoena in question demanded the production of certain "books and records [of the Gaylur Corporation] pertaining to merchandise or materials taken from the premises of * * * [designated] companies insured by the Insurance Company of North America," including any inventory list or invoices pertaining to this merchandise or material. On their face, these items appear to be reasonably related to the subject under investigation (frauds perpetrated against the Insurance Company of North America), making the demand for them lawful. However, in addition to these items the subpoena demanded the production of "the following books and records of Gaylur Mercantile Corporation for the period from January 1, 1964 to March 31, 1966; general ledger, accounts receivable and accounts payable records, cash receipts and cash disbursements journals, payroll ledger, bank statements and cancelled checks." Necessarily included in these records, as conceded by the auditor for the State's Attorney, were items esssential to the conduct of Gaylur's day-to-day affairs that pertained almost exclusively to Gaylur's business relationships with companies and individuals other than those who could conceivably affect North America's interests. For example, payroll records would contain the record of wages paid to individuals whose salaries were not charged against the account of the Insurance Company. Similarly, the cash disbursements journal, bank statements and cancelled checks would reflect expenses incurred by Gaylur in transactions with corporations having no connection with North America. Therefore, in view of the vital nature of these records to Gaylur's operations and the tenuous relationship between them and the instant investigation (which by definition is limited to frauds perpetrated against North America), it is our opinion that the portion of the subpoena naming these

records is so unreasonably broad in its demand as to violate constitutional standards.

Furthermore, while under some circumstances the inclusion of an improper item(s) in a subpoena *duces tecum* does not result in total invalidity so that a witness thereby escapes the obligation of complying with any portion of it (*People* v. *Ryan,* 410 Ill. 486, 498), we believe the legal maxim in *Bowman Dairy Company* v. *United States,* 341 U.S. 214, 221, 95 L. Ed. 879, 885, 71 S. Ct. 675, that "One should not be held in contempt under a subpoena that is part good and part bad" is applicable here. Immediately upon receipt of the subpoena respondent appeared in the circuit court and, by a motion to quash, challenged its validity on the grounds that it was unconstitutionally broad. When the court upheld the subpoena's validity in its entirety, respondent asserted this challenge at the contempt hearing which resulted in the court reaffirming its finding of validity and ordering him held in contempt for failure to produce all of the documents designated in the subpoena. Under these circumstances, where the portion of the subpoena determined to be bad on review has been timely challenged below, and where the contempt order is based, in part, on the failure to produce the documents demanded by that portion, the contempt order cannot be sustained.

Accordingly, the judgment order of the circuit court committing respondent for contempt is reversed.

*Judgment reversed.*

Mr. Justice Ward took no part in the consideration or decision of this case.

Mr. Justice Schaefer, dissenting:

Neither the decisions of the Supreme Court of the United States nor those of this court compel the curtailment of effective grand jury investigations that is brought about by the opinion of the majority.

The majority strikes down that portion of the subpoena

that demanded the production of the following books and records of Gaylur "for the period from January 1, 1964 to March 31, 1966": "[g]eneral ledger, accounts receivable and accounts payable records, cash receipts and cash disbursements journals, payroll ledger, bank statements and cancelled checks." The determination that this portion of the subpoena was unreasonably broad is based on the assertion that it includes "items essential to the conduct of Gaylur's business relationships with companies and individuals other than those who could conceivably affect North America's interests."

To evaluate these conclusions it is necessary to consider the testimony given by George Klauser, the chief auditor for the State's Attorney's office. The parties stipulated that Klauser is "an expert in the auditing field as an accountant, and more specifically as relates to the investigation of financial crimes."

Klauser's explanation of the procedure employed in examining corporate books demonstrates that concern for "the vital nature of these records to Gaylur's operations" is not well-founded. While Klauser did admit that some of the "items [are] essential to the conduct of Gaylur's day to day affairs," he also explained that "where it might exert a hardship on the company that tenders the books and records, without [their] leaving the hands of the representative of the company we make copies of the * * * records and return them immediately." The majority does not attempt to explain how such a very temporary deprivation of Gaylur's books can be regarded as "unreasonably burdensome," the determinative criterion. *Cf., See* v. *City of Seattle*, (1967) 387 U.S. 541, 544, 18 L. Ed. 2d 943, 947, 87 S. Ct. 1737.

In finding that a portion of the subpoena is unreasonably broad, the majority suggests that Klauser's sole justification for including the items found objectionable was a vague assertion that they are necessary "to balance the

total picture of the company." In fact, however, Klauser explained in detail the specific relevance of each item:

"The general ledger is pertinent and material to the investigation. The general ledger is a summary or control of any business, and that would be the book that we'd have to balance all activity out with, to ascertain if any shortage or theft or fraud was perpetrated against the Insurance Company of North America.

"The accounts receivable and accounts payable records are records that would support the entries made in the general ledger. They would be the detailed records of the accounts receivable. If merchandise was sold, belonging to the Insurance Company of North America, not yet paid for, the accounts receivable records should reflect that. The accounts payable records would reflect merchandise that had been sold for which the Insurance Company of North America had not yet been paid.

"The cash receipts journal would reflect, in detail, the entries of the general ledger. It would show what material was sold belonging to the Insurance Company of North America. The cash disbursements also would, in detail, reflect what disbursements were made in handling the sale of this merchandise belonging to the Insurance Company of North America.

"The payroll ledger is part of the balance, in detail, of entries made in the general ledger. It would reflect, in part, what expenses were incurred by Gaylur, in selling merchandise belonging to the Insurance Company of North America.

"Bank statements and cancelled checks are material and pertinent to the investigation because they would support the entries made in the cash receipts and cash disbursement journals."

The majority finds that the records it regards as objectionable will disclose information about companies that had no dealings with the Insurance Company of North America,

but that finding alone does not support a conclusion that these records are immaterial to the grand jury's legitimate inquiries. It merely indicates that compliance with the subpoena would necessarily produce some irrelevant information. The determinative question is whether these records will also disclose information that is relevant, and that question is not answered. In contrast, Klauser's testimony and the findings of the circuit court are clear: there is reasonable cause to believe that the documents do contain information relevant to the grand jury's investigation.

The texts of the grand jury subpoenas that were sustained in *People* v. *Allen*, 410 Ill. 508, *cert.* denied, (1952) 344 U.S. 815, 97 L. Ed. 635, 73 S. Ct. 9, and *People* v. *Ryan*, 410 Ill. 486, *cert.* denied, (1952) 343 U.S. 964, 96 L. Ed. 1361, are set forth in those opinions. They specifically demanded all but two of the eight items that the majority in this case finds objectionable. The first of the two remaining items, "bank statements," is no more than the equivalent of a "check register and journal," "[a]ll cancelled checks," and "[a]ll records showing cash receipts" and "cash disbursements," all of which were demanded in the earlier cases. The relevance of the second of the two items, the "payroll ledger", was explained as follows by Klauser: "The payroll ledger is part of the balance, in detail, of entries made in the general ledger. It would reflect, in part, what expenses were incurred by Gaylur, in selling merchandise belonging to the Insurance Company of North America." Klauser further stated that he had been informed by the State's Attorney's office "that, in making an accounting with the insurance company [North America], Gaylur stated, on its report, the amount that was expended for different types of services * * * [and that] the amount that was spent for payroll expenses is separated on this report." It was not unreasonable to investigate the possibility that one method by which Gaylur might have perpetrated frauds upon North America was by overstating the

amounts paid employees for services performed on North America's account.

The controlling considerations were recently set forth in *People* v. *Allen*, 410 Ill. 508. There we pointed out that "it is obvious that no absolute rule can be laid down either as to the number of books and records which can be compelled to be produced or as to the time interval which they cover. For what the constitutions prohibit is not all searches and seizures, but only those which are unreasonable. (*People* v. *Reid*, 336 Ill. 421; *Wilson* v. *United States*, 221 U.S. 361, [55 L. Ed. 771.]) The reasonable scope of an investigation depends upon what is being investigated. * * * The constitutional provisions were not intended to paralyze the power of the government to ferret out crime. The observation in *Consolidated Rendering Co.* v. *Vermont*, 207 U.S. 541, 554, [52 L. Ed. 327, 336,] is pertinent: 'But unless it can be said that the court or grand jury never has any right to call for all the books and papers, or correspondence, between certain dates and certain persons named, in regard to a complaint which is pending before such court or grand jury, we think the objection here made is not well founded. We see no reason why all such books, papers and correspondence which related to the subject of inquiry, and were described with reasonable detail, should not be called for and the company directed to produce them. Otherwise, the State would be compelled to designate each particular paper which it desired, which presupposes an accurate knowledge of such papers, which the tribunal desiring the papers would probably rarely, if ever, have'." 410 Ill. at 514-15. See also, *Oklahoma Press Publishing Co.* v. *Walling* (1945), 327 U.S. 186, 90 L. Ed. 614; *United States* v. *Morton Salt Co.* (1949), 338 U.S. 632, 94 L. Ed. 401; *United States* v. *Bryan* (1949), 339 U.S. 323, 94 L. Ed. 884.

Mr. JUSTICE UNDERWOOD concurs in this dissent.