THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* HAZEL JACKSON, Defendant-Appellee.

First District (4th Division)   Nos. 81—2832, 81—2833 cons.

Opinion filed July 7, 1983.

Richard M. Daley, State's Attorney, of Chicago (Raymond Brogan, Assistant State's Attorney, of counsel), for the People.

Freddrenna M. Lyle, of Chicago, for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The trial court granted a motion to suppress the defendant's bank records obtained through a grand jury subpoena served on her Illinois bank. The court held that the subpoena violated the defendant's constitutional right to privacy by an unreasonable seizure of her bank records. The State appeals this ruling.

On December 6, 1978, the defendant, Hazel Jackson, was fired from her job as a closing officer at Intercounty Title Company. On December 12, 1979, an employee of Intercounty phoned the State's Attorney's office of Cook County and related his suspicions that the

defendant had been involved in an embezzlement scheme. On May 14, 1980, the State's Attorney's office approved the issuance of a grand jury *subpoena duces tecum* to the defendant's bank, the Central National. The subpoena directed the bank to turn over the defendant's records covering the period from August 1977 to October 26, 1979. Nine months later, on February 27, 1981, the Cook County grand jury returned an indictment against the defendant charging her with theft in that she was unlawfully receiving unemployment benefits while still employed.

On May 21, 1981, the defendant filed her motion to suppress the subpoena. The motion alleged that there had been an unreasonable seizure of her bank records under the Illinois Constitution; that the subpoena had not been properly authorized by the grand jury; that the subpoena was not served with notice to her as a bank customer pursuant to the Illinois Banking Act (Ill. Rev. Stat. 1979, ch. 16½, par. 148.1(d)(1)); and that the subpoena was unreasonably broad in scope.

During the hearing on the motion to suppress, it was stipulated that there was no evidence that the State's Attorney's office had appeared before the grand jury or before any judge to request the issuance of the subpoena; that the grand jury docket for the relevant dates contained no information regarding the issuance of this subpoena; that the assistant State's Attorney handling the investigation did not recollect appearing before the grand jury to obtain the subpoena; that the official shorthand reporter assigned to record the grand jury proceedings of May 14, 1980, had no record of any testimony being presented to that body regarding the issuance of a subpoena to Hazel Jackson's bank; and that the defendant had received no notification that a subpoena had been issued for her bank records.

■ Rights of privacy are protected against unreasonable searches and seizures under both the Federal and State constitutions. (*Katz v. United States* (1967), 389 U.S. 347, 350, 19 L. Ed. 2d 576, 581, 88 S. Ct. 507, 510; Ill. Const. 1970, art. I, sec. 6.) The first question is whether there is a right of privacy in the bank records. If there is, she has standing to make the motion to suppress the evidence. The second question then becomes whether the seizure was reasonable or unreasonable under the Federal and State constitutions.

The defendant concedes that under *United States v. Miller* (1976), 425 U.S. 435, 48 L. Ed. 2d 71, 96 S. Ct. 1619, the United States Supreme Court decided under circumstances substantially similar to those here that there is no privacy right in bank records and consequently the defendant there had no standing. Jackson contends that if

*Miller* is applied the motion to suppress should be denied. However, she contends that the Illinois courts may set a higher standard under the Illinois constitutional provisions against unreasonable search and seizure as other States have done.

In *Miller*, the defendant, like the defendant here, had been charged with various Federal offenses and had made a pretrial motion to suppress his bank records. He contended that his records had been illegally seized by *subpoena duces tecum* in violation of the fourth amendment. The court of appeals concluded that the subpoenaed documents fell within a constitutionally protected zone of privacy. The Supreme Court held that the defendant possessed no privacy interest in the bank records that could be vindicated by a challenge to the subpoena. The Supreme Court reasoned that the subpoenaed materials were business records of the bank, not the defendant's private papers; that there is no legitimate "expectation of privacy" in the contents of original checks and deposit slips because these are not confidential communications but negotiable instruments used in commercial transactions; that the fourth amendment does not prohibit the obtaining of information voluntarily conveyed to a third party which the third party then turns over to government authorities; and that the issuance of a subpoena to a third party does not violate a defendant's rights even if a criminal prosecution is contemplated at the time the subpoena is issued.

Jackson argues that she has a right of privacy in her bank records under article I, section 6 of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 6) and a right to privacy and notice under section 141.1(d)(1) of the Illinois Banking Act (Ill. Rev. Stat. 1979, ch. 16½, par. 148.1(d)(1)). A State may of course set a higher standard of rights than the comparable United States constitutional right. (See *Cooper v. California* (1967), 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788.) Colorado, California and Pennsylvania rejected the rationale of *Miller* and held that there was a privacy right in bank records and consequently there was standing. *Charnes v. Di Giacomo* (1980), 200 Col. 94, 612 P.2d 1117; *Commonwealth of Pennsylvania v. DeJohn* (1979), 486 Pa. 32, 403 A.2d 1283; *Burrows v. Superior Court* (1974), 13 Cal. 3d 238, 529 P.2d 590.

The facts in the three cases cited above closely parallel the facts in the instant cause. In each situation, the petitioner moved to suppress the production of his/her bank records which had been subpoenaed from the bank pursuant to a State investigation of his/her financial activities. The State supreme court, in each case, considered and rejected an application of *Miller* holding that their respective State

constitutions recognized a reasonable expectation of privacy in bank records which could only be intruded upon by a valid subpoena.

These courts rejected the rationale in *Miller* because it relies for its analysis of an expectation of privacy upon the ownership and possession of the records and not the reasonable expectations of the individual. The State courts accepted the fourth amendment test set out in *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507, which provides protection for "people not places." (*Cf.* W. LaFave, Search & Seizure sec. 2.7, at 411 (1978); 14 San Diego L. Rev. 414 (1977); 83 Yale L.J. 1439 (1974).) Under *Katz,* the fourth amendment gives protection for an individual's reasonable expectation of privacy which is not bound by the location and present ownership of the records. Consequently, the right to privacy is not waived by placing these records in the hands of a bank. The individual can still legitimately expect that her financial records will not be subject to disclosure. See *Burrows v. Superior Court* (1974), 13 Cal. 3d 238, 529 P.2d 590.

Unlike the State constitutions in California, Pennsylvania and Colorado, our Illinois constitution has a privacy provision which expressly grants our citizens protection from an unreasonable invasion of their privacy. Article I, section 6 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, sec. 6) is entitled "Searches, Seizures, Privacy and Interceptions" and provides:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of *privacy* or interceptions of communications by eavesdropping devices or other means." (Emphasis added.)

The Constitutional Commentary on this provision explains, "Section 6 expands upon the individual rights which were contained in Section 6 of Article II of the 1870 Constitution and the guarantees of the Fourth and Fourteenth Amendments to the United States Constitution." (Ill. Ann. Stat., 1970 Const., art. I, sec. 6, Constitutional Commentary, at 317 (Smith-Hurd 1971).) The Commentary also states that "the protection against 'invasion of privacy' is new and is stated broadly. No definition of types of privacy is offered." Ill. Ann. Stat., 1970 Const., art. I, sec. 6, Constitutional Commentary, at 317 (Smith-Hurd 1971).

■ In reliance upon this express proscription against invasion of privacy in Illinois and influenced by the Commentary, which suggests that this protection should be broadly applied, we are led to conclude that the Illinois Constitution offers protection for the reasonable ex-

pectation of privacy which our citizens have in their bank records.

■ We believe that it is reasonable for our citizens to expect that their bank records will be protected from disclosure because in the course of bank dealings, a depositor reveals many aspects of her personal affairs, opinion, habit and associations which provide a current biography of her activities. Such a biography should not be subject to an unreasonable seizure by the State government. Furthermore, we reject the idea set out in *Miller* that a citizen waives any legitimate expectation in her financial records when she resorts to the banking system. Since it is virtually impossible to participate in the economic life of contemporary society without maintaining an account with a bank, opening a bank account is not entirely volitional and should not be seen as conduct which constitutes à waiver of an expectation of privacy. See *Burrows v. Superior Court* (1974), 13 Cal. 3d 238, 529 P.2d 590.

■ Having decided that there is a constitutional right of privacy in Illinois in a person's bank records, the second aspect of the constitutional problem comes into focus; that is, has there been an unreasonable seizure in violation of that person's legitimate expectation of privacy in those bank records. Even with a right of privacy in bank records guaranteed by the Illinois Constitution, the protection is only against unreasonable search and seizures and not reasonable ones. See LaFave, Search and Seizure sec. 4.12(e), at 207 (1978).

■ When dealing with subpoenas, the determination as to what is a reasonable search and seizure is made by balancing the public interest against the individual's need for private security. (*Oklahoma Press Publishing Co. v. Walling* (1946), 327 U.S. 186, 90 L. Ed. 614, 66 S. Ct. 494.) Where the government seeks to compel disclosure of private records, a person's privacy interest in nondisclosure must be balanced against the interest of the public in having effective grand jury investigations. In Illinois, the grand jury has been endowed with broad investigative powers. (Ill. Rev. Stat. 1981, ch. 38, par. 112—4(b); *People v. Allen* (1951), 410 Ill. 508, 103 N.E.2d 92, *cert. denied* (1952), 344 U.S. 815, 97 L. Ed. 635, 73 S. Ct. 9; *People ex rel. Fisher v. Carey* (1979), 77 Ill. 2d 259, 396 N.E.2d 17, *aff'g in part and rev'g in part* (1978), 64 Ill. App. 3d 239, 380 N.E.2d 1150.) However, when these investigations infringe on a person's protected right of privacy, the reasonableness of the intrusion is tested by the validity of the subpoena.

■ Although a subpoena is a constructive search presenting no question of an actual search or seizure (see *People v. Allen* (1951), 410 Ill. 508, 103 N.E.2d 92, *cert. denied* (1952), 344 U.S. 815, 97 L. Ed.

635, 73 S. Ct. 9), two guidelines have been followed by the courts in determining whether the intrusion into a person's privacy is a reasonable intrusion and whether the subpoena is valid: (1) the document sought must be relevant to the inquiry and (2) a specification of the document to be produced must be adequate but not excessive for the purpose of the relevant inquiry. (*Oklahoma Press Publishing Co. v. Walling* (1946), 327 U.S. 186, 90 L. Ed. 614, 66 S. Ct. 494; *People v. Lurie* (1968), 39 Ill. 2d 331, 235 N.E.2d 637.) Only after applying these guidelines should a court determine whether a valid subpoena has been issued which is able to withstand a motion to suppress. *People ex rel. Legislative Commission on Low Income Housing v. Keefe* (1967), 36 Ill. 2d 460, 223 N.E.2d 144.

■ When these two guidelines are applied to the subpoena at issue here, we find that the intrusion into Jackson's bank records was reasonable. The subject of the grand jury's investigation was Jackson's unlawful receipt of State of Illinois employment security benefits while still gainfully employed. Her financial records for the period of time under investigation were subpoenaed from Central National Bank. Such financial records were obviously relevant to this investigation. Furthermore, Jackson asserted that the subpoena was overly broad, but presented no evidence to show why it was excessive and why certain documents should have been excluded. She thus failed to carry her burden of proof as to excessiveness. Therefore, we conclude that this subpoena in fact met the two guidelines of relevancy and nonexcessiveness and was valid.

■ Jackson raises two further issues. The trial court had found that the grand jury did not in fact cause the subpoena to issue because the grand jury docket does not record the issuance of the subpoena. There is no statutory requirement that a docket entry be made or a record kept and transcribed of requests by the State for grand jury subpoenas. Section 112—7 of the Code of Criminal Procedure of 1963 provides only that the testimony of witnesses before the grand jury be transcribed. (Ill. Rev. Stat. 1979, ch. 38, par. 112—7.) Accordingly, the record does not support the conclusion reached by the trial court that the subpoena was never authorized. See *People v. Haag* (1979), 80 Ill. App. 3d 135, 399 N.E.2d 284.

■ Jackson's final argument is that she was entitled to notice of the subpoena under the Illinois Banking Act. The notice provision that was in effect at the time the subpoena was issued is as follows (Ill. Rev. Stat. 1981, ch. 17, par. 360(d)):

"A bank shall disclose financial records *** pursuant to a lawful subpoena, summons, warrant or court order only after

the bank mails a copy of the subpoena, summons, warrant or court order to the person establishing the relationship with the bank ***."

We do not agree that this notice provision provides Jackson with grounds to suppress the subpoena of her bank records. The statute by its terms only tries to set out the obligations which a bank owes to its bank customers. These are the obligations of confidentiality and the obligation of notice to a customer if this confidentiality is abridged. The statute does not attempt to regulate governmental intrusion into a customer's confidential bank owes to its customers. These are the obligations of confidentiality and the obligation of notice to a customer if this confidentiality is abridged. The statute does not attempt to regulate governmental intrusion into a customer's confidential bank records. Thus relying solely upon this statute, Jackson cannot attempt to suppress a governmental subpoena or claim the right to notice when one is issued.

For the above reasons, we reverse the order of the circuit court granting the motion to suppress the subpoena.

ROMITI, P.J., and JOHNSON, J., concur.