(No. 60629.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ALBERT KRULL et al., Appellees.

*Opinion filed January 18, 1989.*

STAMOS and CALVO, JJ., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert and Roma Jones Stewart, Assistant Attorneys General, of Chicago, and Michael E. Shabat, Joan S. Cherry, Peter D. Fischer, and Thomas V. Gainer, Jr., Assistant State's Attorneys, of counsel), for the People.

Louis B. Garippo, of Louis B. Garippo, Ltd., Miriam F. Miquelon, of Miquelon and Associates, Ltd., and James M. Obbish, of Kane, Obbish & Propes, all of Chicago, for appellees.

JUSTICE MILLER delivered the opinion of the court:

This case is before us on remand from the United States Supreme Court. (*Illinois v. Krull* (1987), 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160.) The Court, in its decision, determined that the good-faith exception to the exclusionary rule applies when evidence is obtained by police officers who are acting in objectively reasonable reliance upon a statute that authorizes warrantless administrative searches but that is later found unconstitutional. The Court further held that the police officer's reliance on the statute involved in the instant case was objectively reasonable. The issues remaining for our consideration involve an analysis of whether the officer in question acted within the scope of the statute in conducting the search.

On July 5, 1981, a Chicago police officer executed a search of the Action Iron and Metal Company (Action Iron), pursuant to section 5—401(e) of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1981, ch. 95½, par. 5—401(e)), which authorized warrantless administrative searches of automotive wrecking yards. The officer seized several motor vehicles, and the defendants were subsequently charged with a number of criminal violations of the Code (Ill. Rev. Stat. 1981, ch. 95½, pars. 1—100 through 20—402). Following a pretrial evidentiary hearing in the circuit court of Cook County, the circuit judge ruled that section 5—401(e) was unconstitutional and granted the defendants' motion to suppress the evidence seized. The State appealed that ruling to the appellate court. In an unpublished order, the appellate court vacated the circuit court's judgment and remanded the cause for further proceedings. (119 Ill. App. 3d 1163 (unpublished order under Supreme Court Rule 23).) The circuit judge was directed, on remand, to reevaluate the constitutionality of section 5—401(e) and to reexamine the question of the police officer's good-faith reliance upon the statute, in light of several recent decisions of the United States Supreme Court in which the good-faith conduct of police officers was found sufficient to validate otherwise unconstitutional searches and seizures.

On remand, the circuit judge reaffirmed his earlier ruling that section 5—401(e) of the Code was unconstitutional and, given the invalidity of the statute, again ordered that the evidence be suppressed. The circuit judge further concluded that the officer's good-faith reliance on the statute was not relevant. In making those determinations, the circuit judge noted that the police officer in question was not acting within the scope of the statute in conducting the search; at the time of the hearing,

the parties had not raised the question whether the officer was acting within the scope of the statute.

The State appealed the circuit court's judgment directly to this court. (See 107 Ill. 2d R. 603.) We affirmed the judgment, holding that the statute in effect at the time of the search was unconstitutional and that the officer's good-faith reliance upon the statute was irrelevant. (107 Ill. 2d 107, 118-19.) The State then sought review in the United States Supreme Court.

The United States Supreme Court granted the State's petition for a writ of *certiorari* (*Illinois v. Krull* (1986), 475 U.S. 1080, 89 L. Ed. 2d 714, 106 S. Ct. 1456) and subsequently reversed our determination (*Illinois v. Krull* (1987), 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160). The cause was remanded to this court for further proceedings.

On September 25, 1981, the initial hearing was held in the circuit court on the defendants' motion to suppress. The evidence presented indicated that on July 5, 1981, Detective Leilan McNally of the Chicago police department went to the premises of Action Iron, an automobile wrecking yard located in Chicago. Pursuant to departmental policy, McNally possessed authority to conduct warrantless administrative searches of automobile wrecking yards. The purpose of these searches was to monitor compliance with provisions of the Code regulating the automotive parts business. At the suppression hearing, Detective McNally testified that he inspected wrecking yards on a regular basis. McNally explained that on the morning in question, he observed tow trucks transporting automobiles onto the premises. McNally said that he entered the yard and identified himself as a police officer to defendant George Lucas, who was working in the yard. McNally asked Lucas whether the yard was open for business; Lucas replied that it was, and that he was in charge.

Detective McNally then asked Lucas to produce the dealer's license and the records of vehicles purchased. Lucas could not produce the license or records. Lucas did, however, surrender a pad of paper upon which five vehicle purchases were recorded, and he told the detective the list contained all the vehicles he had purchased. Detective McNally then requested and received permission from Lucas to inspect the cars in the yard.

Detective McNally proceeded to inspect the vehicles in the yard, recording their identification numbers. He then checked those numbers on a mobile computer and discovered that three of the vehicles were reported to have been stolen. Detective McNally also found a fourth vehicle that had had its identification number removed. As a result, Detective McNally seized those four vehicles and placed Lucas under arrest. Defendant Albert Krull, the holder of the license, and defendant Salvatore Mucerino, who arrived at the premises the day of the search, were later arrested. Krull, Lucas, and Mucerino were charged with criminal violations of the Code. At the hearing McNally admitted that he did not have either a search warrant or an arrest warrant at the time.

At the conclusion of the suppression hearing, the circuit judge granted the defendants' motion to suppress the evidence seized by Detective McNally. In granting the motion, the circuit judge relied on the Federal district court's decision in *Bionic Auto Parts & Sales, Inc. v. Fahner* (1981), 518 F. Supp. 582, which had been issued on July 6, 1981, one day after the search at issue here. In *Bionic Auto Parts* the district court ruled that section 5—401(e) was unconstitutional because the provision failed to meet the standards for administrative searches established in *Donovan v. Dewey* (1981), 452 U.S. 594, 69 L. Ed. 2d 262, 101 S. Ct. 2534, and the district court entered a preliminary injunction enjoining its enforcement. The circuit judge in this case adopted the

district court's rationale. The State appealed the circuit court's decision to the appellate court.

While the case was pending in the appellate court, the legislature amended the Code, adding provisions to limit the nature, frequency, and duration of warrantless administrative searches of automotive parts dealerships. (See Ill. Rev. Stat. 1983, ch. 95½, pars. 5—100—1, 5—403.) Sometime after that, and also during the pendency of the State's appeal, the United States Court of Appeals for the Seventh Circuit considered the district court's decision in *Bionic Auto Parts*. The court of appeals ruled that the amendments cured the constitutional defects in section 5—401(e) recognized by the Federal district court; the court of appeals did not address the constitutionality of the version of the statute in effect before the amendments. (*Bionic Auto Parts & Sales, Inc. v. Fahner* (7th Cir. 1983), 721 F.2d 1072.) The Court of Appeals therefore set aside the district court's order preliminarily enjoining enforcement of the former version of section 5—401(e).

The appellate court vacated the circuit court's judgment suppressing evidence. The appellate court relied on the intervening decision of the Seventh Circuit and on the amendments to the Code. The appellate court remanded the cause to the circuit court for a reexamination of the constitutionality of section 5—401(e) in light of the decision of the Federal appeals court upholding the amended statute, and for consideration of the State's good-faith argument.

At the remand hearing on July 9, 1984, the circuit judge reaffirmed his original ruling granting the defendants' motion to suppress evidence. Relying on the version of section 5—401(e) in effect when the search was conducted, the circuit judge again stated that the basis for his decision was that the search and seizure were conducted under the auspices of an unconstitutional stat-

ute. The circuit judge further found that Detective McNally's good-faith reliance upon the statute, if shown at all, was irrelevant to the disposition of the case. The judge also indicated that Detective McNally had not acted within the scope of the statute when he made a general search of the premises at Action Iron.

Based on the circuit judge's ruling that section 5—401(e) was unconstitutional, the State appealed directly to this court under our Rule 603 (107 Ill. 2d R. 603). We held that the version of section 5—401(e) in effect at the time of the search was unconstitutional because it vested State officials with "too much discretion to decide who, when, and how long to search." (107 Ill. 2d at 116.) We also rejected the State's argument that a police officer's good-faith reliance on a statute, later held unconstitutional, would cure an otherwise illegal search. In light of our rulings that the statute was unconstitutional and that the good-faith exception was not available, we did not consider the State's further contention that Detective McNally's search was in compliance with the terms of section 5—401(e).

The United States Supreme Court reversed our decision. (*Illinois v. Krull* (1987), 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160.) The Supreme Court extended to this case the good-faith exception to the exclusionary rule that had first been established in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405. The Court held that the fourth amendment exclusionary rule does not apply to evidence seized by a police officer who reasonably relied, in objective good faith, on a statute that authorizes a warrantless administrative search but that is later found to be unconstitutional.

In reaching that result, the Court noted that the primary purpose of the exclusionary rule is to deter future unlawful police activity. The Court noted that application of the exclusionary rule has been limited to situations in

which its remedial purpose is effectively advanced. (*Krull*, 480 U.S. at 347, 94 L. Ed. 2d at 373, 107 S. Ct. at 1166.) The Court concluded that the exclusion of evidence seized by officers acting in objectively reasonable reliance on a statute would deter neither police officers nor legislators. The Court did, however, recognize that the constraints set forth in *Leon* on the availability of the good-faith exception should also limit the good-faith exception with respect to searches authorized by statute. (*Krull*, 480 U.S. at 355, 94 L. Ed. 2d at 378-79, 107 S. Ct. at 1170.) As a result, a law enforcement officer cannot act in good-faith reliance upon a statute if its provisions are such that an officer reasonably should have known that the statute was unconstitutional. *Krull*, 480 U.S. at 355, 94 L. Ed. 2d at 379, 107 S. Ct. at 1170.

The Court concluded that Detective McNally's reliance upon section 5—401(e) was objectively reasonable. The Court assumed that section 5—401(e) was unconstitutional, as we had concluded. The Court, however, ruled that the asserted constitutional "defect in the statute was not sufficiently obvious so as to render a police officer's reliance upon the statute objectively unreasonable." (*Krull*, 480 U.S. at 359, 94 L. Ed. 2d at 381, 107 S. Ct. at 1172.) Based on Detective McNally's objective good-faith reliance on the statute, the Court concluded that the exclusionary rule did not apply to the evidence seized. The Court remanded the cause to this court for further proceedings, so that several additional questions raised by the parties could be resolved. These matters included determining "whether the trial court made a definitive ruling regarding the scope of the statute, whether the State preserved its objection to any such ruling, and, if so, whether the trial court properly interpreted the statute." *Krull*, 480 U.S. at 360 n.17, 94 L. Ed. 2d at 382 n.17, 107 S. Ct. at 1172 n.17.

The State now argues that although the circuit court found the statute unconstitutional and the good-faith exception inapplicable, the circuit court never made an express finding on the issue of whether Detective McNally was acting within the scope of the statute. According to the State, all references by the judge to the scope of the statute were *dicta*. The defendants maintain, however, that the circuit judge expressly ruled that McNally was acting outside the scope of section 5—401(e). It appears from the record that although the trial judge granted the motion to dismiss based upon the unconstitutionality of the statute, he additionally ruled on the scope of the statute.

At the July 9, 1984, hearing on remand from the Illinois Appellate Court, the circuit judge made a finding regarding Detective McNally's compliance with the scope of the statute. Prior to reaffirming his earlier ruling on the motion to suppress, the trial judge made the following findings:

> "[T]hat Detective McNulty [*sic*] entered the premises *** pursuant to the authority provided him in the Illinois Motor Vehicle Code of Section 5—401(e), which said these officers can go on the premises to inspect the records at any time, day or night. And then they had the authority to verify the accuracy of the records required to be kept pursuant to another section, and rules of the Secretary of State.
>
> That's the reason Officer McNulty [*sic*] was there.
>
> * * *
>
> He was there to conduct an inspection, a license check pursuant to authority granted by the statute, and he asked for the required records, which is commonly known as the police book, which could not be produced at that time. However, Mr. [Lucas] had taken down some notes of vehicles that he had purchased. And it was based on these records then that Detective McNulty [*sic*] con-

ducted his search. I wouldn't call it a search, but a verification.

Had he only verified the four or five vehicles that were indicated on this particular sheet of paper, I think he would have been within his statutory authority; because the statute says first you check the records, then you have the opportunity to verify the records are accurate. It's a two-step process. Now, he didn't do that.

He took those records, and then he said to Mr. [Lucas], may I look around."

These statements indicate that the circuit judge found that Detective McNally was acting outside the scope of the statute in conducting the search.

The defendants assert that although the trial judge ruled that Detective McNally was acting outside the scope of the statute, the State failed to preserve any challenge to the finding. Contrary to the defendants' view, however, we believe that the issue has been preserved for purposes of review.

When the circuit judge, on remand, again held section 5—401(e) unconstitutional, the State appealed the order pursuant to Supreme Court Rule 603 (107 Ill. 2d R. 603). At that time, the State argued that Detective McNally's search was in full compliance with section 5—401(e) and was properly limited to an examination of the records and inventory of Action Iron. The defendants argued that the State was bound by the circuit court's finding that Detective McNally had exceeded his statutory authority. Because we found section 5—401(e) unconstitutional and the good-faith exception inapplicable, it was not necessary that we also address the issue of the officer's compliance within the scope of the statute. Although the issue was not discussed in our previous disposition, it was raised by the State and was properly preserved.

Having concluded that the circuit judge ruled that Detective McNally exceeded the scope of the statute and

that the issue was properly preserved for review, we must now determine the remaining question, whether the circuit judge correctly interpreted the statute in ruling that the detective's conduct here was outside the scope of the statute. The State maintains that the circuit judge incorrectly construed section 5—401(e) by ignoring the policy and purpose underlying the statute. According to the State, the purpose of the legislation—preventing theft of automobiles and trafficking in stolen automobile parts—is thwarted if licensees are allowed to forestall a search simply by failing to maintain the required records. The State concludes that, in the absence of adequate recordkeeping by an automobile parts dealer, a general search of the business premises does not contravene the statute. The defendants, however, contend that the circuit judge correctly interpreted and applied the statute. Because the statute in effect at the time relevant here confined the search to conduct necessary to corroborate the records of the business, the defendants assert that Detective McNally exceeded the scope of the statute in conducting a general search of the premises.

Our examination of the evidence and of section 5—401(e) convinces us that, at the time of the search, Detective McNally was acting in compliance with the statute. Under section 5—301 of the Code, dealers in used auto parts are required to be licensed. (Ill. Rev. Stat. 1981, ch. 95½, par. 5—301.) Once licensed, dealers must keep records pertaining to the acquisition and disposition of vehicles and parts. Ill. Rev. Stat. 1981, ch. 95½, par. 5—401(a).

The version of section 5—401(e) in effect at the time of the search here required that the records be open to inspection by any peace officer "at any reasonable time during the night or day." (Ill. Rev. Stat. 1981, ch. 95½, par. 5—401(e).) The statute further provided, "Such inspection may include examination of the premises of the

licensee's established place of business for the purpose of determining the accuracy of required records." (Ill. Rev. Stat. 1981, ch. 95½, par. 5—401(e).) The express policy underlying that procedure is to facilitate the discovery and prevention of automobile thefts. *Northern Illinois Auto Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 61; see also Ill. Rev. Stat. 1983, ch. 95½, par. 5—100—1.

The automobile dismantling and parts industry has a long history of regulation in Illinois. (See *Bionic Auto Parts*, 721 F.2d at 1079.) Beginning in 1934, the State required automotive parts dealers to be licensed. (Ill. Rev. Stat. 1983, ch. 95½, par. 5—301.) In the 1950s, the legislature imposed recordkeeping requirements so that the State could continuously monitor dealers in an effort to prevent criminal activity. Under current law, when a new licensee enters the automotive parts business he agrees to comply with the stringent recordkeeping requirements. (Ill. Rev. Stat. 1985, ch. 95½, par. 5—401.2.) In 1985 the legislature enacted measures to provide for the imposition of criminal sanctions for the failure to keep adequate records. (Ill. Rev. Stat. 1985, ch. 95½, par. 5—404.) Prior to that time, there was no penalty for the failure to comply with the recordkeeping provisions of the Code.

Thus, when Detective McNally conducted his search of Action Iron, there were no sanctions for a dealer's failure to keep adequate records. To allow a dealer to escape inspection by failing to keep adequate records completely undermines the policy and purpose underlying the statute. This is evidenced by the legislature's subsequent adoption of penalties for the failure to keep records.

The United States Supreme Court recently upheld the constitutionality of a New York inspection provision similar to ours. (*New York v. Burger* (1987), 482 U.S. 691,

96 L. Ed. 2d 601, 107 S. Ct. 2636.) In reviewing the New York statute, the Court examined the underlying policies and administrative goals of the inspection statute. Recognizing the potential problem of dealers who fail to comply with recordkeeping provisions, the Court noted:

> "The purposes of maintaining junkyards in the hands of legitimate-business persons and of tracing vehicles that pass through these businesses, however, also are served by having the officers examine the operator's inventory even when the operator, for whatever reason, fails to produce the police book. Forbidding inspecting officers from examining the inventory in this situation would permit an illegitimate vehicle dismantler to thwart the purposes of the administrative scheme and would have the absurd result of subjecting his counterpart who maintained records to a more extensive search." *Burger*, 482 U.S. at 716, 96 L. Ed. 2d at 622, 107 S. Ct. at 2651-52.

We find this reasoning instructive in our analysis of section 5—401(e). Detective McNally's search was conducted before the adoption of any statutory sanctions for the failure to keep adequate records. The defendants, however, were well aware of the State statutes regulating the operation of their wrecking yard. In fact, defendant Lucas willingly surrendered a partial list of inventory he had purchased. The defendants did not produce a complete inventory listing as was required by law. When Detective McNally proceeded to inspect the inventory, it was with the purpose of verifying the sparse records that were produced, as well as to ensure that the defendants' operations were a legitimate business. Detective McNally's discovery of evidence of other violations of the Code during the course of his search did not invalidate the search. The policies and purposes underlying the allowance of warrantless administrative searches warrant a finding that Detective McNally was

acting within the scope of the statute. Consequently, the evidence was improperly suppressed.

As a final matter, we note the limited nature of our decision. We hold only that Detective McNally did not exceed the scope of that version of section 5—401(e) in effect at the time he conducted a search of Action Iron on July 5, 1981. For the reasons given, the circuit court's order granting the defendants' motion to suppress evidence is reversed, and the cause is remanded for further proceedings.

*Judgment reversed;*
*cause remanded.*

STAMOS and CALVO, JJ., took no part in the consideration or decision of this case.