THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES F. BESSLER, Defendant-Appellant.

Second District   Nos. 2—88—0118 through 2—88—0120 cons.

Opinion filed December 4, 1989.—Rehearing denied January 8, 1990.

INGLIS, J., dissenting.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Following a stipulated bench trial in the circuit court of Du Page County, defendant, Charles F. Bessler, was found guilty of the offenses of unlawful use of weapons (Ill. Rev. Stat. 1987, ch. 38, par. 24—1(a)(7)), possession of a firearm without having a firearm owner's identification (FOID) card (Ill. Rev. Stat. 1987, ch. 38, par. 83—2), and unlawful possession of not more than 2.5 grams of a substance containing cannabis (Ill. Rev. Stat. 1987, ch. 56½, par. 704(a)) and was sentenced to an 18-month term of periodic imprisonment, a $250 fine, and a $100 fine on the convictions, respectively.

Defendant appeals, contending that his pretrial motion to suppress evidence should have been granted because the search of his garage pursuant to a search warrant was based on an earlier unlawful warrantless administrative search of the premises.

Defendant's motion to suppress evidence alleges that on March 24, 1987, police officers entered a garage at 310 East Elm, Villa Park,

Illinois, pursuant to a search warrant, and shortly thereafter arrested and charged him with unlawful use of weapons, possession of a firearm without having a FOID card, and unlawful possession of cannabis. Defendant's motion further states that the search warrant was obtained through false and misleading allegations. In an amendment to the motion to suppress, defendant also alleges that the "predicate search which was the basis for the search warrant was illegal" because there was no authority for the police and a housing inspector to go upon the property and look into the garage.

At the hearing on the motion to suppress, the testimony shows that defendant lived with his parents at 310 East Elm in Villa Park and rented from them the detached garage to the rear of the residence. The garage is approximately 10 to 15 feet behind the house. Defendant uses the garage to work on cars and store tools. On March 24, 1987, the garage door was secured by a padlock and chain and the one window was boarded up. No one could see inside according to defendant.

On the morning of March 24, 1987, at about 10:45, David Jones, a property maintenance and housing inspector for the Village of Villa Park, and Officer Robert Budig of the village police department went to 310 East Elm. According to Jones, the village's building department previously received a telephone call from a neighbor complaining that five or six males were seen going in and out of the garage at 310 East Elm. The caller suggested that someone might be living in the garage. If true, according to Jones, this would allegedly constitute a violation of a Villa Park ordinance. Jones decided to investigate the report, and he requested that the Villa Park police department send an officer to accompany him. Jones stated that it is common for building inspectors to request a police officer to accompany them on certain inspections if going alone would make the inspector uncomfortable. Budig and Jones testified that the purpose of the visit was to determine whether anyone was, in fact, living in the garage.

The two knocked at the door of the house but received no answer. They then went behind the house to inspect the garage to determine if someone was living there. Jones believed he could enter onto the property and search the exterior of the premises for purposes of enforcing code violations. He based this assumption on a village ordinance which allowed certain village officials to enter structures or premises for the purpose of making inspections. They attempted to look into the window of the garage, but were unable to do so because the window was covered. They testified, however, that the pedestrian door, though chained and padlocked, could be opened about two to three inches.

They attempted to peer into this small opening, but apparently Officer Budig's flashlight was not powerful enough to sufficiently illuminate the inside of the dark garage.

Leaving Jones at the garage, Officer Budig then drove to the police station to retrieve a more powerful flashlight. When Budig returned, he and Jones tried again to look into the garage. Budig stated that he saw on a table in the garage a mound of white, powdery substance on a piece of glass which appeared to be cocaine. He said that next to the white powder were two chunks of another substance he believed was "crack" cocaine. He also observed a glass water pipe and a scale. Officer Budig later swore to these facts in an affidavit, and a warrant to search the premises was subsequently issued based on this information.

A search of the garage was conducted at 6:20 p.m. that day according to the search warrant inventory form. The search produced, *inter alia*, a .20 gauge shotgun with a barrel less than 18 inches in length, less than 2.5 grams of a green, leafy substance later determined to be cannabis, and drug paraphernalia.

Defendant testified that he returned to the garage sometime early in the afternoon of March 24, 1987, and found the condition of the garage to be different from the way he had left it. According to the defendant, the material covering the garage window was pulled away and the window broken so that light could enter the garage. At 7 p.m. that day defendant was arrested. After his arrest, defendant made certain incriminating statements to the police.

Following the circuit court's denial of the motion to suppress on the basis that the initial inspection of the garage pursuant to the municipal ordinance was not violative of defendant's constitutional rights and that the search warrant was properly obtained, defendant stipulated to facts to be submitted to the court at a bench trial. The facts so stipulated were that the search of the garage pursuant to the search warrant resulted in the seizure of a shotgun with a barrel less than 18 inches in length and less than 2.5 grams of cannabis and that, following the search, defendant admitted the property seized was his and he did not have a FOID card. Following this stipulation of facts, the circuit court found defendant guilty of the three charges set forth above.

On appeal, defendant has abandoned his contention below that the affidavit for search warrant contained false and misleading allegations and proceeds on the sole ground that the initial entry onto his premises and search of the garage without a warrant was violative of the fourth amendment's prohibition against unreasonable searches and sei-

zures (U.S. Const., amend. IV). In support thereof, defendant argues that administrative searches of a home, such as conducted here, are significant intrusions upon persons' fourth amendment rights and, when conducted without a search warrant, have been held to lack the traditional safeguards which the fourth amendment guarantees to individuals, citing *Camara v. Municipal Court* (1967), 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727.

In responding to this argument, the State concedes that the garage was within the curtilage of the home. Further, the State has not contended that the village ordinance authorizing a village code enforcement official "to enter any structure or premises at any reasonable time for the purpose of making inspections and performing duties under this code" (Villa Park, Ill., Ordinance 2224 (March 16, 1987) (enacting provisions of the 1984 BOCA Basic/National Existing Structures Code)) is constitutional. (See *Camara v. Municipal Court* (1967), 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (where a similar ordinance authorizing warrantless administrative searches of a home was held violative of the fourth amendment).) Instead, the State maintains, citing *Illinois v. Krull* (1987), 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160, that the "good faith" exception to the exclusionary rule is applicable here, where the initial search was based upon the officer's reasonable reliance upon a village ordinance which allowed warrantless administrative inspections on private residential property, even if the ordinance is later deemed unconstitutional.

In *Illinois v. Krull*, the question before the Supreme Court was whether a similar exception to the exclusionary rule, as set forth in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (fourth amendment exclusionary rule does not apply to evidence obtained by police officers who acted in objectively reasonable reliance upon a search warrant issued by a magistrate, but where the warrant was ultimately found to be unsupported by probable cause), should be recognized when officers act in objectively reasonable reliance upon a statute authorizing warrantless administrative searches, but where the statute is ultimately found to violate the fourth amendment. (*Krull*, 480 U.S. at 342, 94 L. Ed. 2d at 370, 107 S. Ct. at 1163.) The Court held that the defect in the Illinois statute allowing State officials to inspect records of motor vehicle dealers, parts dealers, automobile scrap processors, and similar businesses without a warrant at any reasonable time, found unconstitutional by the Illinois Supreme Court, was not sufficiently obvious so as to render a police officer's reliance upon the statute objectively unreasonable. (480 U.S. at 359, 94 L. Ed. 2d at 381, 107 S. Ct. at 1172.) Thus, the "good faith" exception

to the exclusionary rule was extended to a warrantless administrative search where the State statute allowing the inspection of certain business premises was subsequently found unconstitutional.

■ There is a significant difference between the facts in the instant case and those in *Illinois v. Krull*. The warrantless administrative search undertaken here, as authorized under the municipal ordinance, was of a private residence, whereas in *Illinois v. Krull* the State statute implicated allowed warrantless administrative inspections of a heavily regulated business. The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home. (*Donovan v. Dewey* (1981), 452 U.S. 594, 598-99, 69 L. Ed. 2d 262, 268-69, 101 S. Ct. 2534, 2537-38.) The physical entry of the home is the chief evil against which the wording of the fourth amendment is directed. (*Payton v. New York* (1980), 445 U.S. 573, 585-86, 63 L. Ed. 2d 639, 650, 100 S. Ct. 1371, 1379-80.) In the absence of consent or exigent circumstances, the entry into a home to conduct a search or make an arrest is unreasonable under the fourth amendment unless done pursuant to a warrant. *Steagald v. United States* (1981), 451 U.S. 204, 211-12, 68 L. Ed. 2d 38, 45, 101 S. Ct. 1642, 1647.

As this case does not come within the "good faith" exception to the exclusionary rule established in *United States v. Leon* or *Illinois v. Krull*, we decline to create another exception to the exclusionary rule which would invade the long-protected sanctity of the home from warrantless searches. Such a judicially created "good faith" exception should be left to the Supreme Court. (See *People v. Ross* (1985), 133 Ill. App. 3d 66, 73-74, 478 N.E.2d 575.) In view of our holding on this basis, we need not make further inquiry into such potential issues as whether there may be reliance on a municipal ordinance, as is the case here, rather than a State statute, as in *Illinois v. Krull*, for the "good faith" exception to apply, and whether the officer could objectively reasonably rely on the ordinance which was substantially similar to the ordinance previously held defective over 20 years ago in *Camara v. Municipal Court*.

■ We, therefore, conclude that the officer's peering into the garage within the curtilage of defendant's home without a warrant and not under some recognized exception to the warrant requirement was violative of defendant's fourth amendment rights. Where the initial search is unlawful, the information gained therefrom cannot form the basis for the issuance of a search warrant, and evidence so obtained is inadmissible. *People v. Bowen* (1987), 164 Ill. App. 3d 164, 177-78, 517

N.E.2d 608; see *People v. Koniecki* (1985), 135 Ill. App. 3d 394, 401, 481 N.E.2d 973.

Accordingly, the denial of the motion to suppress evidence was manifestly erroneous, and the judgment of conviction is reversed. The cause is remanded for a new trial. The evidence seized pursuant to the search warrant and defendant's statements made subsequent to his arrest are suppressed.

■ The State requests in its brief, however, that should this court reverse the denial of the suppression order entered below, we also remand to allow evidence to be taken in order to determine whether defendant's post-arrest statements were otherwise admissible under *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254. In *Brown,* the Supreme Court held that a confession rendered inadmissible by a prior illegal arrest is admissible if, after considering such factors as whether *Miranda* warnings were given, the temporal proximity of the arrest and confession, the presence of intervening circumstances and the purpose and flagrancy of the official misconduct, it is shown that the confession is sufficiently attenuated from the taint of the illegal arrest. *Brown,* 422 U.S. at 602-04, 45 L. Ed. 2d at 426-27, 95 S. Ct. at 2261-62.

■ As the circuit court denied defendant's motion to suppress, the State had no reason to urge admission of defendant's statements pursuant to *Brown v. Illinois.* Thus, there is no evidence in this record from which we can properly determine whether the statements were sufficiently attenuated from the taint of the illegal arrest. Consequently, it will be necessary, should the State seek to admit defendant's statements at a new trial, that the trial court conduct a pretrial evidentiary hearing to ascertain whether the statements are admissible under *Brown v. Illinois.* See *Brown,* 422 U.S. at 604, 45 L. Ed. 2d at 427, 95 S. Ct. at 2262; see also *Morales v. New York* (1969), 396 U.S. 102, 24 L. Ed. 2d 299, 90 S. Ct. 291.

The judgment of the circuit court is reversed, and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

McLAREN, J., concurs.

JUSTICE INGLIS, dissenting:

I respectfully dissent from the majority and would find that the good-faith exception to the exclusionary rule as articulated in *Illinois v. Krull* (1987), 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160, is

controlling in the case at bar.

The good-faith exception was first recognized by the United States Supreme Court in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, and was later expanded in *Illinois v. Krull*. In *Leon*, the defendant was arrested after a search of his residence revealed a large quantity of narcotics. The search was based on a facially valid search warrant later determined to be invalid. The Court held that evidence seized on the authority of a search warrant later found to be invalid need not be excluded if the police officer's reliance on the warrant was objectively reasonable. The Court reasoned that to exclude evidence under these circumstances would not further the underlying purpose of the exclusionary rule, which is to deter police misconduct, because at the time of the search and seizure the police officer was acting as a reasonable police officer should. 468 U.S. at 918-19, 82 L. Ed. 2d at 696, 104 S. Ct. at 3418.

In *Krull*, relying on the same rationale used in *Leon*, the Court extended the good-faith exception to situations in which a police officer conducts a search and seizure under the authority of a statute later found to be unconstitutional. The Court reasoned:

> "The approach used in *Leon* is equally applicable to the present case. The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant. Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written." (*Krull*, 480 U.S. at 349-50, 94 L. Ed. 2d at 375, 107 S. Ct. at 1167.)

To fit within the *Krull* type of good-faith exception, the officer's reliance on the constitutionally defective statute must be objectively reasonable. Further, the legislature which enacted the statute must not have wholly abandoned its responsibility to enact laws consistent with the constitution. *Krull*, 480 U.S. at 355, 94 L. Ed. 2d at 378-79, 107 S. Ct. at 1170.

The majority found that the holding in *Krull* was inapplicable to the case at bar because *Krull* involved an inspection of a commercial property, whereas in the case at bar a private residence was inspected.

I find no support for the distinction made by the majority. (See *People v. Mashaney* (1987), 160 Ill. App. 3d 390, 393-94.) *Krull* was substantially based on the holding and reasoning in *Leon* which involved a search of a private residence. While it is true that a private dwelling is generally afforded more protection than commercial property (*Donovan v. Dewey* (1981), 452 U.S. 594, 598-99, 69 L. Ed. 2d 262, 268-69, 101 S. Ct. 2534, 2537-38), the protection is provided through meeting the good-faith requirement, not by barring the application of the exception altogether.

In applying the good-faith requirement to the case at bar, I believe the police officer's actions fell within the *Krull* exception to the exclusionary rule. It does not seem unreasonable for an officer to rely on an ordinance designed to enforce the city's building codes. The applicable standard is that of a "reasonable officer," not of an attorney, or other legal professional, trained to research the law.

In addition, it does not appear to me that the Village "wholly abandoned" its obligation to pass constitutional laws. While we may declare the ordinance to be unconstitutional, that fact alone does not suggest that the Village "wholly abandoned" its obligation. If it did, the good-faith exception in *Krull* could never be met.

Therefore, I respectfully dissent.