THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROSIE L. McGEE, Defendant-Appellee.

Second District   No. 2—93—0718

Opinion filed November 30, 1994.—Rehearing denied January 10, 1995.

INGLIS, P.J., specially concurring.

James E. Ryan, State's Attorney, of Wheaton, and Constance Augsburger, of Mt. Morris (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers and Lisa A. Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, and Richard Paul Levee, Assistant Public Defender, of Wheaton, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The State appeals from the trial court's order granting the motion of defendant, Rosie L. McGee, to suppress the results of a blood-alcohol test taken pursuant to section 11—501.6(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch. 95$\frac{1}{2}$, par. 11—501.6(a) (now 625 ILCS 5/11—501.6(a) (West 1992))). The statute was later declared facially unconstitutional in *King v. Ryan* (1992), 153 Ill. 2d 449, because it permitted unreasonable searches and seizures without the particularized probable cause (indicia of intoxication) necessary under the United States *and* the Illinois Constitutions. (U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; see *People v. Lukach* (1994), 263 Ill. App. 3d 318.) The State argued against suppression because the officer relied in "good faith" on the validity of the statute at the time he requested the test.

We sympathize with the legislature's attempt to facilitate the identification and prosecution of drunk drivers. We empathize with law enforcement officers who have the difficult task of preserving and protecting society while honoring their oath of office to support the Illinois Constitution. Nevertheless, we affirm.

In excluding the evidence, the circuit court relied on *People v. Bessler* (1989), 191 Ill. App. 3d 374, in which this court found inapplicable the expanded "good-faith" exception to the exclusionary

rule articulated in *Illinois v. Krull* (1987), 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (*Krull* hereafter). *Krull* extended the "good-faith" exception of *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, originally applied to searches based on warrants later found technically defective, to a warrantless administrative inspection of a heavily regulated business under a statute later declared unconstitutional. In *Bessler*, this court also refused to further extend the good-faith exception to the exclusionary rule and thereby invade the sanctity of the home, which has long been protected by our courts from warrantless searches. *Bessler*, 191 Ill. App. 3d at 379.

The State invites us to reexamine the purposes of the exclusionary rule, to abrogate or limit *Bessler*, and to extend the good-faith exception to the exclusionary rule in this case. We decline to extend the good-faith exception articulated in *Krull* and considered in *Bessler*, and we hold that it should not be applied here by this court because such further application of the exception would violate the Illinois Constitution.

■ According to the undisputed facts found in the common-law record, on December 6, 1991, defendant was involved in a two-car accident in Aurora, Illinois. The investigating officer requested that defendant take a blood-alcohol test pursuant to section 11—501.6(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch. 95 1/2, par. 11—501.6(a) (now 625 ILCS 5/11—501.6(a) (West 1992))), later declared facially unconstitutional. The statute provided that the driver of a motor vehicle be deemed to have given consent to be tested for alcohol or other drugs in his or her blood if there was "probable cause to believe that such person was the driver at fault, in whole or in part, for a motor vehicle accident which resulted in the death or personal injury of any person." (Ill. Rev. Stat. 1991, ch. 95 1/2, par. 11—501.6(a) (now 625 ILCS 5/11—501.6(a) (West 1992)).) That provision did not require particularized probable cause that the driver was driving under the influence or that the intoxication have a sufficient nexus to an offense so as to permit the warrantless testing of a defendant. (*Lukach*, 263 Ill. App. 3d 318.) The evidence thus gathered could be used against a defendant in a civil or criminal proceeding, and a refusal of the test would result in suspension of the driver's license. *King*, 153 Ill. 2d at 455-56.

A few months after the accident, defendant was charged with driving under the influence of alcohol. On March 18, 1993, defendant filed her motion to suppress evidence, asserting that the testing was an unreasonable search under the Federal and State Constitutions. (U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6.) Defendant relied

on *King* and *Bessler*. The State never contended that probable cause existed to test defendant, but rather argued that *Krull*'s good-faith exception to the Federal, fourth-amendment-based exclusionary rule applied. There was no evidentiary hearing. Based on the briefs and arguments of the parties, the court granted defendant's motion as a matter of law, finding *Bessler* controlling. We review this case *de novo. People v. Mourecek* (1991), 208 Ill. App. 3d 87, 91.

In *United States v. Leon,* the United States Supreme Court first recognized a good-faith exception to the fourth amendment exclusionary rule which permits the use of evidence obtained by officers acting in objectively reasonable or good-faith reliance on a search warrant issued by a detached and neutral magistrate, but ultimately found to be unsupported by probable cause. This limited exception to the exclusionary rule was expressly created for searches conducted pursuant to a warrant and was not to be applied, for example, where the magistrate wholly abandoned his judicial role, or where a warrant was so lacking in indicia of probable cause or so facially deficient that the officer could not reasonably rely on it. *Leon,* 468 U.S. at 923, 82 L. Ed. 2d at 699, 104 S. Ct. at 3421.

In *Illinois v. Krull* (480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160), the Court extended the limited *Leon* good-faith exception by holding that the fourth amendment did not require exclusion of evidence seized by a police officer who reasonably relied, in objective good faith, on a statute that authorized a warrantless administrative search although the statute was later found to be unconstitutional. The Illinois statute in question was directed at a heavily regulated industry and allowed State officials to inspect, without a warrant, the premises of licensed motor vehicle dealers, parts dealers, and scrap processors to ascertain the accuracy of their records. Our State supreme court found the statute unconstitutional because it vested State officials with too much discretion to search. The United States Supreme Court held that the defect in the statute was not sufficiently obvious so as to render a police officer's reliance upon the statute objectively unreasonable. The Court concluded that the officer relied in good faith on the statute, that the exclusionary rule did not apply, and reversed our supreme court's decision (*People v. Krull* (1985), 107 Ill. 2d 107).

■ In reaching this result, the Court noted that the exclusionary rule operates as a judicially created remedy designed to safeguard fourth amendment rights generally through its deterrent effect rather than as a personal constitutional right of the aggrieved party; the rule's primary purpose ostensibly is to deter future unlawful police activity and was limited to situations in which its remedial

purpose would be effectively advanced. The Court did not believe the exclusionary rule would deter either legislators from enacting unconstitutional laws, or police officers acting in good faith, but postulated that any incremental deterrent benefit must be weighed against the substantial social costs of the rule. *Krull*, 480 U.S. at 347, 352, 94 L. Ed. 2d at 373, 376-77, 107 S. Ct. at 1165-66, 1168; see also *People v. Krull* (1989), 126 Ill. 2d 235, 241-42 (on remand).

■ The Court allowed for two rather cryptic and difficult "tests" or "exceptions to the exception" to determine when a statute cannot support an officer's objectively reasonable reliance on it. The exception would not apply (1) if, in passing the statute, the legislature wholly abandoned its responsibility to enact constitutional laws, or (2) if an officer relied upon a statute whose provisions were such that a reasonable officer should have known that the statute was unconstitutional. *Krull*, 480 U.S. at 355, 94 L. Ed. 2d at 378-79, 107 S. Ct. at 1170; see Kiely, Note, *Illinois v. Krull: When Has a Legislature Wholly Abandoned Its Responsibility to Enact Constitutional Laws?*, 1993 U. Ill. L. Rev. 411 (discusses how the tests could be implemented).

In *Bessler*, this court was asked to apply the *Krull* good-faith exception to a warrantless administrative inspection of a private residence under a municipal ordinance authorizing housing inspectors to inspect premises for code violations. When an inspector accompanied by the police examined the home, evidence of unlawful possession of weapons and cannabis was found. This court found that *Krull* was distinguishable on its facts as it extended the good-faith exception to the exclusionary rule only to a warrantless administrative search of a heavily regulated business. The court found the *Krull* exception inapplicable to the warrantless inspection of a private home because of the greater expectation of privacy an individual has in his home over that of an owner of commercial property. We believe the court correctly declined to apply the *Krull* exception, leaving it to a higher court to do so.

In declining to extend *Krull* beyond its facts, the *Bessler* court was well aware that the courts of Illinois had yet to expressly extend the *Leon* good-faith exception to warrantless searches. (See *People v. Madison* (1988), 121 Ill. 2d 195, *aff'g People v. Madison* (1986), 149 Ill. App. 3d 592; *Mourecek*, 208 Ill. App. 3d at 93 ("Illinois courts have consistently refused to apply the good-faith exception in cases where no warrant is present"); *People v. Buffo* (1990), 202 Ill. App. 3d 240; *People v. Ross* (1985), 133 Ill. App. 3d 66; see also *People v. Vought* (1988), 174 Ill. App. 3d 563; *cf. People v. Mashaney* (1987), 160 Ill. App. 3d 390 (warrant-based search where officer committed warrantless good-faith technical error).) Indeed, the State has not cited, nor

have we found, any Illinois case applying the *Krull* exception (beyond the facts of *Krull* itself) to a warrant*less* search based on an unconstitutional statute.

■ Here, defendant had perhaps the highest expectation of personal privacy in the integrity of her own body; absent a warrant or probable cause and exigent circumstances, we are loathe to apply the *Krull* exception in the face of an intrusion of this magnitude without further direction from our supreme court. (See *King*, 153 Ill. 2d at 462-65.) We believe any further expansion of the *Krull* good-faith exception would emasculate the judicially created exclusionary rule independently applied in Illinois for more than 70 years to *remedy* violations of our citizens' right to privacy and freedom from unlawful searches and seizures guaranteed by the Illinois Constitution. The rule was adopted in Illinois by our supreme court long before *Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, made the rule applicable to the States. See *People v. Brocamp* (1923), 307 Ill. 448.

The good-faith exception has been severely criticized by respected legal scholars (see, *e.g.*, LaFave, *"The Seductive Call of Expediency"*: *United States v. Leon, Its Rationale and Ramifications*, 1994 U. Ill. L. Rev. 895). It has also been rejected by a growing chorus of judicial authorities of first rank holding that the exception contravenes their respective State constitutions on various grounds. See *State v. Marsala* (1990), 216 Conn. 150, 579 A.2d 58 (exception incompatible with State constitutional provision against unreasonable searches and seizures; costs not so substantial as to overcome benefit of exclusionary rule; induces judges to ensure compliance with warrant-probable cause requirement; exclusionary rule promotes institutional as well as individual officer compliance); *State v. Guzman* (1992), 122 Idaho 981, 842 P.2d 660 (reviews history of rule; rule has multiple purposes beyond deterring unlawful police conduct; exclusion is constitutionally mandated remedy; provides effective remedy to aggrieved person; encourages thoroughness in warrant issuing process; prevents judiciary from committing additional violation by admitting illegally obtained evidence; preserves judicial integrity; cost-benefit analysis of *Leon* rejected—courts routinely exclude evidence on other bases; good-faith exception dilutes constitutional standard of probable cause); *State v. Novembrino* (1987), 105 N.J. 95, 519 A.2d 820 (exclusionary rule integral element of State constitutional guarantee; rule does not merely deter police misconduct, it serves to vindicate the constitutional right to be free from unreasonable searches; exception would undermine State constitution's fundamental requirement of probable cause; preservation of requirement is

responsibility of judiciary); *State v. Carter* (1988), 322 N.C. 709, 370 S.E.2d 553 (good-faith exception not applied to blood sample evidence taken without warrant but taken only on nontestimonial identification order which lacked probable cause; exclusionary rule is the only effective proven remedy to preserve privacy rights and to maintain integrity of judicial branch; courts cannot condone or participate in constitutional violation, and State constitution demands exclusion for violation; cost-benefit analysis of *Krull* rejected); *Commonwealth v. Edmunds* (1991), 526 Pa. 374, 586 A.2d 887 (traces history of State and Federal rule, exception, decisions of other States; in view of strong right of privacy and probable cause requirement embodied in State constitution, good-faith exception would emasculate safeguards developed over 200 years; judicial participation in use of fruits of illegal searches would only undermine integrity of judiciary; invasion of privacy by any branch of government, whether in good faith or bad, is equally intrusive; court considered additional policy reasons to reject good-faith exception); *State v. Oakes* (1991), 157 Vt. 171, 598 A.2d 119 (rejects cost-benefit theory of *Leon*; exclusionary rule does not penalize individual officer, but rather promotes institutional compliance, provides incentive for proper warrants, judicial inquiry and guidance; *Leon* good-faith exception cannot limit exclusionary rule adopted by court for violations of Vermont Constitution). Additional decisions premised on State constitutional law include *People v. Scott* (1992), 79 N.Y.2d 474, 593 N.E.2d 1328 (State constitutional guarantee of privacy requires warrant and probable cause determination; noting *Krull*, court nevertheless found warrantless administrative search was impermissible under circumstances); *State v. Thompson* (Utah 1991), 810 P.2d 415 (*Krull* good-faith exception would not be applied under State constitution to illegal subpoena issued to defendants' banks by attorney general who had discretion to construe and implement subpoena statute; evidence suppressed). See Annot., 19 A.L.R.5th 470 (1994)(numerous cases cited therein).

*Krull*'s 5 to 4 decision to extend the good-faith exception to a warrantless search pursuant to a statute later found unconstitutional, we believe, makes the good-faith exception even more *untenable*. (See 1 W. LaFave, Search & Seizure § 1.3(h) (2d ed. Supp. 1994); *Krull*, 480 U.S. at 361-69, 94 L. Ed. 2d at 382-88, 107 S. Ct. at 1173-77 (O'Connor, J., dissenting, joined by Brennan, Marshall & Stevens, JJ.).) It is an exception that threatens to *nullify* the exclusionary rule.

Justice O'Connor's dissent clearly demonstrated the fatal flaws in the majority view. First, there was a powerful historic basis for

excluding evidence resulting from searches authorized by an unconstitutional statute, and the fourth amendment was a response to ancient legislation authorizing indiscriminate general searches by writ of assistance; the exclusionary rule had been regularly applied to suppress evidence gathered under statutes authorizing unreasonable searches (*e.g.*, *Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338). Second, *Leon* on its face did not purport to disturb prior decisions excluding evidence when involving statutes which, by their own terms, authorized searches without the traditional warrant and probable-cause requirements. Third, *Leon*'s distinction between the judicial and the legislative roles was an important and sound one:

> "The judicial role is particularized, fact-specific and nonpolitical. Judicial authorization of a particular search does not threaten the liberty of everyone, but rather authorizes a single search under particular circumstances. The legislative act, on the other hand, sweeps broadly, authorizing whole classes of searches, without any particularized showing. *** Certainly the latter poses a greater threat to liberty." (*Krull*, 480 U.S. at 365, 94 L. Ed. 2d at 385, 107 S. Ct. at 1175 (O'Connor, J., dissenting).)

Fourth, the failure to apply the exclusionary rule to searches based on unconstitutional statutes creates a disincentive to promulgate constitutional laws. The exception applied to unconstitutional legislation would provide a substantial grace period during which the police may, in good faith, obtain and use constitutionally tainted evidence. As to the unexplained tests the majority proposed to determine when the *Krull* exception would not apply, Justice O'Connor set out the difficulties that a court will face in ascertaining when a reasonable officer should be held to know that a statute has become "clearly" unconstitutional, or under what circumstances a legislature can be said to have "wholly abandoned" its obligation to pass constitutional laws. We believe these tests proposed by the *Krull* majority are essentially unworkable. (See Kiely, Note, 1993 U. Ill. L. Rev. 411.) We do not believe our courts should engage in *metaphysical abstractions* to ascertain the legal knowledge and the motivations of either the legislature in enacting statutes or the police in enforcing them. In *People v. Madison* (1988), 121 Ill. 2d 195, our own supreme court, recognizing the danger of eviscerating the exclusionary rule, found *Krull* inapplicable when the officer claimed he made a reasonable but mistaken interpretation of the scope of his search under a particular administrative search statute similar to that in *Krull*. (See 1 LaFave, Search & Seizure, § 1.3(h) (2d ed. Supp. 1994).) Last, but not least, Justice O'Connor in *Krull* points out that there would be

no effective remedy provided to the victim of the unreasonable search in the very case in which the unconstitutional statute was considered and there would be no incentive to challenge unconstitutional statutes.

We believe the reasons enumerated by the above-cited authorities militate against applying the *Krull* exception here because to do so would violate our long-established State constitutional protections.

The Illinois Constitution prohibits warrantless, nonconsensual searches or seizures without probable cause (*People v. Ott* (1991), 209 Ill. App. 3d 783, 787), and the ultimate test of the constitutionality of a search or seizure is reasonableness (*People v. Cohen* (1986), 146 Ill. App. 3d 618, 622). When an officer proceeds without a warrant, the probable-cause standards employed must be at least as stringent as those guiding a magistrate in issuing a warrant. (*People v. Tisler* (1984), 103 Ill. 2d 226, 236 (adopting totality-of-the-circumstances probable cause test in Illinois).) However, in Illinois, a warrantless search or seizure is deemed unreasonable *per se* unless it comes within a specific, well-delineated exception to the warrant requirement: search by consent, search incident to lawful arrest, and search based on probable cause coupled with exigent circumstances making it impractical to obtain a warrant. (*People v. Harrell* (1992), 226 Ill. App. 3d 866, 872; see *Madison*, 121 Ill. 2d at 201.) In addition, an "emergency" exception has been recognized. (See *People v. Speer* (1989), 184 Ill. App. 3d 730.) A highly limited administrative search exception has also been recognized, but, notwithstanding *Krull*, our supreme court has ruled that, if the primary object of an administrative inspection provided by statute is to gather evidence of criminal activity, a search warrant based on probable cause must nevertheless be obtained in order to *seize* the evidence, or it will be deemed inadmissible. *Madison*, 121 Ill. 2d 195.

We are aware that under the so-called "lockstep" doctrine our supreme court has in the past indicated its willingness to follow United States Supreme Court decisions when the Federal and State constitutional provisions and issues are similar, especially in fourth amendment cases. However, in appropriate cases, our supreme court has indicated its willingness to conduct independent analyses under the Illinois Constitution in a number of areas, including free speech, jury trials, self-incrimination, and due process. (See *People v. DiGuida* (1992), 152 Ill. 2d 104; see also *People v. Williams* (1989), 182 Ill. App. 3d 598, 644-67 (Pincham, J., dissenting) (traces history of independent analysis under Illinois Constitution).) Our supreme court has ruled that the Illinois Constitution provides greater protection against governmental invasions of a person's privacy rights than

does the Federal Constitution. (*In re May 1991 Will County Grand Jury* (1992), 152 Ill. 2d 381, 390.) The court has determined that invasions of the physical integrity of a person must be based on probable cause or the intrusion constitutes an unreasonable invasion of privacy. *King*, 153 Ill. 2d at 464 (blood-alcohol test based on unconstitutional statute); *In re May 1991 Will County Grand Jury*, 152 Ill. 2d at 399 (grand jury subpoena of head and pubic hair specimens); Ill. Const. 1970, art. I, § 6.

The Illinois Constitution provides:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against *unreasonable* searches, seizures, *invasions of privacy* or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." (Emphasis added.) (Ill. Const. 1970, art. I, § 6.)

The right to be free from unreasonable invasions of privacy is express and more broadly stated under the Illinois Constitution than under the United States Constitution. (*People v. Jackson* (1983), 116 Ill. App. 3d 430, 434.) The Committee on the Bill of Rights of the Sixth Illinois Constitutional Convention proposed that "every person be guaranteed a zone of privacy" and that the new provision to the Constitution "creates a direct right to freedom from *** invasions of privacy by government or public officials." 6 Record of Proceedings, Sixth Illinois Constitutional Convention 32.

It is clear, under Illinois law, the warrant and probable cause requirements are constitutionally mandated to preserve our citizens' right of privacy and to prevent unreasonable searches and seizures, subject only to the most narrowly defined exceptions. The *Krull* good-faith exception to the exclusionary rule has been found inapplicable or has been rejected by the courts of this State. (See, *e.g.*, *Madison*, 121 Ill. 2d 195; *People v. Layton* (1990), 196 Ill. App. 3d 78; *Bessler*, 191 Ill. App. 3d 374.) We believe that the exclusionary rule applies in this case and is mandated under our State Constitution irrespective of any application of the tests suggested by the United States Supreme Court in *Krull*.

Although the Federal exclusionary rule has been treated as a remedy distinct from the personal fourth amendment right itself, the Supreme Court has indicated that State courts, and Illinois in particular, which independently adopted the exclusionary rule in 1923 (*Brocamp*, 307 Ill. 448), should be able to rest their decisions concerning any modification of the exclusionary rule on adequate

and independent State grounds. (*Leon*, 468 U.S. at 906-07, 82 L. Ed. 2d at 688, 104 S. Ct. at 3412; *Illinois v. Gates* (1983), 462 U.S. 213, 221-22, 251, 76 L. Ed. 2d 527, 537-38, 556-57, 103 S. Ct. 2317, 2323-24, 2339-40 (White, J., concurring); see *Michigan v. Long* (1983), 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469.) We do not believe it is necessary to explore further the distinction between the right and the remedy. We believe that, even if our State exclusionary rule is no more than a judicially created remedy, the court would have an obligation to ensure that the remedy effectuates the State constitutional right to privacy. *People v. Castree* (1924), 311 Ill. 392, 407 (having obtained evidence by means prohibited by constitution, State cannot be permitted to utilize the wrong through its judicial tribunal; court is sworn to support and enforce the constitution, relying on *Brocamp* (307 Ill. 448) (duty of court to exclude evidence obtained in violation of State Constitution)); see also *State v. Oakes* (1991), 157 Vt. 171, 173, 598 A.2d 119, 121.

Thus, while the primary purpose of the exclusionary rule has been to deter police misconduct at least in the Federal context (see *Madison*, 121 Ill. 2d at 205), as explained in the many cases cited above from other jurisdictions, the rule has many other important purposes, including the preservation of judicial integrity. The judiciary cannot, and should not, tolerate evidence-gathering practices which violate the constitution. *Grames v. Illinois State Police* (1993), 254 Ill. App. 3d 191, 200; *People v. Zymantas* (1986), 147 Ill. App. 3d 420, 433; *People v. Garcia* (1982), 109 Ill. App. 3d 142, 148; see Meltzer, *Deterring Constitutional Violations by Law Enforcement Officials: Plaintiffs and Defendants as Private Attorneys General*, 88 Colum. L. Rev. 247, 271-94 (1988) (examines judicial role and judicial authority theories).

Our supreme court cautions against using the good-faith exception to eviscerate the exclusionary rule and requires that we uphold the warrant and probable cause requirements. (*Madison*, 121 Ill. 2d at 208.) If *Leon* good-faith reliance on a facially invalid warrant cannot legitimize an unconstitutional search, in the absence of probable cause, neither can reliance on a facially invalid statute such as the one in this case (*King*, 153 Ill. 2d 449). Our review of numerous authorities persuades us that the overall deterrent benefit of the exclusionary rule far outweighs the social costs and is a necessary judicial remedy in a case such as this. The benefit is not merely marginal. See Nardulli, *The Societal Costs of the Exclusionary Rule Revisited*, 1987 U. Ill. L. Rev. 223; Orfield, Comment, *The Exclusionary Rule and Deterrence: An Empirical Study of Chicago Narcotics Officers*, 54 U. Chi. L. Rev. 1016 (1987); *State v. Marsala* (1990), 216 Conn. 150, 579 A.2d 58.

The exclusionary rule is not intended to punish, but is designed to promote both individual and institutional compliance with the constitutional mandate against unreasonable governmental invasions of privacy. In vindicating individual rights, the exclusionary rule encourages compliance by the legislative and executive branches and induces scrutiny and guidance from the judicial branch of Illinois. It encourages the legislature to enact constitutional laws and prevents legislative "grace" periods during which large classes of constitutional violations may freely take place. It encourages the executive branch to uphold its oath to support the Illinois Constitution while carrying out the duties of the particular office. It permits courts to honor the constitution other than merely to note its breach. In the final analysis, it is not the exclusionary rule that places limits on the government to gather evidence of crimes, it is the constitution itself. See *Oakes*, 157 Vt. at 180, 598 A.2d at 124.

In this case, we have found the *Krull* tests unworkable and the *Krull* good-faith exception incompatible with the State constitutional guarantee against unreasonable invasions of privacy. We decline to overrule or limit *Bessler*. (*People v. Bessler* (1989), 191 Ill. App. 3d 374.) This court will not extend or apply the *Krull* good-faith exception to the State's 70-year application of the exclusionary rule. The circuit court's order suppressing the evidence was not error under the rights afforded under the Illinois Constitution. *Lukach*, 263 Ill. App. 3d at 322-23.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

COLWELL, J., concurs.

PRESIDING JUSTICE INGLIS, specially concurring:

I concur in the result; however, I do not agree that the good-faith exception should be eradicated. We should strictly limit this decision to the suppression of the results of a blood-alcohol test taken pursuant to a statute that is subsequently declared unconstitutional. The good-faith exception recognizes the reality of a society where the social costs of drug-related crimes are exceedingly high. The courts should be cautious in unduly limiting the ability of law enforcement officials to obtain evidence. At the same time, the constitutional guarantees should be respected and upheld by the courts.